FEDERAL NATIONAL BANK *vs.* THOMAS J. O'KEEFE.

Suffolk.   February 4, 1929. — April 9, 1929.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Practice, Civil,* Amendment, Charge to jury.   *Evidence,* Of payment, Competency.

In an action of contract by the payee of a promissory note, it was proper to allow a motion by the plaintiff to amend the declaration by adding a count containing allegations that the defendant executed a guaranty in writing covering all present or future indebtedness of a certain corporation to the plaintiff, who stipulated at the time of making the motion that the additional count included the claim contained in the original count, that both counts were for the same cause of action, and that the whole sum claimed was no larger than that specified in the first count: the record not showing the contrary, it must be assumed by this court that evidence presented or statements of counsel made to the judge who heard the motion warranted him in finding that the amendment would enable the plaintiff to sustain the action for the cause for which it was intended to be brought, and that he so found.

In an action upon a writing whereby the defendant guaranteed the payment of certain obligations of a corporation to the plaintiff, the plaintiff sought to recover the amount of a promissory note made by the corporation payable to the plaintiff. The defence was payment. *Held,* that the defendant properly was allowed to testify that, after the execution of the guaranty, he delivered to the plaintiff a trade acceptance of another corporation in an amount about equal to the note and that he "presumed" that the plaintiff collected the trade acceptance.

In an action of contract by a bank upon a guaranty in writing executed by an individual and covering the obligations of a certain corporation to which the plaintiff had lent money in order to effect a composition with its creditors and from which it had received certain notes therefor, exceptions by the plaintiff to specific portions of the charge to the jury must be sustained, if such portions, considered in the light of the whole charge, could not have failed to convey to the jury the impression that the plaintiff was being held up to scorn and ridicule by the judge and

that the judge's attitude was that the plaintiff ought not to prevail, and if such impression was not eradicated from the minds of the jury by further instructions to disregard what had already been said to them, so that in all probability they entered upon their deliberations in a biased frame of mind.

CONTRACT. Writ dated August 1, 1923.

In the Superior Court, a motion by the plaintiff to amend its declaration was allowed by *Bishop*, J. The action thereafter was tried before *Macleod*, J. The declaration and the amendment thereto, and material evidence and portions of the charge to the jury at the trial, are described in the opinion. The jury found for the defendant. Both parties alleged exceptions.

*S. L. Bailen*, for the plaintiff.

*F. M. Carroll*, for the defendant.

PIERCE, J. This is an action of contract brought by a writ, dated August 1, 1923, to recover upon a promissory note, payable to the order of the Federal Trust Company for $5,040, and dated July 30, 1919. The *ad damnum* is in the amount of $6,500. The defendant's answer set up the plea of payment.

On April 11, 1927, the judge allowed the addition to the declaration of "Count 2," which reads: "And the plaintiff says that it is the successor to the Federal Trust Company, in accordance with provisions of laws in such cases made and provided; that the defendant executed an instrument, in writing, reading as follows: 'Boston, Mass., September 4, 1919. In consideration of one dollar and other valuable considerations paid to me by the Federal Trust Company, the receipt whereof is hereby acknowledged, I hereby guarantee to said Company, its successors or assigns, payment at maturity of the obligation described below, waiving the right of demand and notice. I further guarantee the payment of all legal and other expenses in the collection of said obligation and also agree to sign on demand a similar guaranty of any renewal of the whole or any part thereof, this guaranty to remain in full force until delivery of said new guaranty. (1) Demand note of American Belting and Tanning Company, dated July 30, 1919, in the amount of

$17,250.51, to the order of Federal Trust Company. (2) All indebtedness due or to become due from said American Belting and Tanning Company to said Federal Trust Company.'" On the same day the plaintiff filed in court the following stipulation: "It is hereby stipulated by counsel for the plaintiff that the second count of the plaintiff's declaration covers and includes the claim in the first count, and that both counts are for the same cause of action. The plaintiff does not claim more than $5,040 with interest on either count." At the trial the plaintiff waived the first count of its declaration.

After a trial to a jury and a verdict for the defendant, the case comes before us upon the defendant's exceptions to the allowance of "Count 2" as an amendment to the plaintiff's declaration, and upon the plaintiff's exceptions to the admission of certain evidence and to the charge of the presiding judge.

The first and fundamental question is, Had the judge authority to allow the addition, "Count 2," to the declaration? Upon the record it must be assumed that the judge, who allowed the motion after a hearing, heard evidence or at least statements of counsel, and upon such evidence or statements found that the addition would enable the plaintiff to sustain the action for the cause for which it was intended to be brought. G. L. c. 231, §§ 51, 138. *Mann* v. *Brewer*, 7 Allen, 202. *Driscoll* v. *Holt*, 170 Mass. 262, 265. *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 5, 6. *Holmes* v. *Carraher*, 251 Mass. 536, 539. See *Weinstein* v. *Miller*, 251 Mass. 503. The defendant's exceptions are overruled.

At the trial on "Count 2" of the declaration, there was evidence "that in June, 1919, the company, of which the defendant was president and treasurer, was petitioned into bankruptcy; that, at that time, the plaintiff had a claim against the company of $6,300, represented by sundry notes, which were all endorsed by the defendant individually; that as a result of negotiations between the plaintiff and the defendant, the plaintiff agreed to put up money necessary to make a composition settlement with the company's creditors; and accordingly, a twenty per cent composition

offer was made and accepted by creditors; that the plaintiff advanced the money needed for the composition settlement and received from the company two promissory notes, both dated July 30, 1919, and payable on demand, one in the amount of $17,520.51, and one in the amount of $5,040, the latter being indorsed by the defendant as guarantor . . . . On September 4, 1919, in consequence of an agreement between the defendant and the plaintiff to the effect that the latter would forbear to demand payment of the above notes then, the defendant executed and delivered to the plaintiff the written guaranty which was introduced in evidence as Exhibit 1 and a copy of which appears in the second count of the declaration, and the company executed and delivered to the plaintiff a chattel mortgage of its personal property, which mortgage recites in the preamble 'In consideration of one dollar and the forbearance of the grantee from demanding payment of the notes hereinafter described (the $17,520.-51 and $5040.00 notes) and other considerations.'"

"There was evidence from the records of the plaintiff bank that the larger note was credited on the following dates with the following amounts: May 28, 1920, $5,040; June 24, 1920, $5,000; and October 5, 1920, $2,500. An assistant cashier testified that the amount of a note of $5,980.51 dated December 7, 1920, and signed by the company, was made up by the consolidation of one note of Thomas F. O'Keefe of $1,000 and the balance on the $17,520.51 note of the company, $4,980.51. The defendant testified that he received the $17,520.51 note, stamped 'Paid,' about that time, from the then treasurer of the company, and further testified that he had no knowledge of the $5,980.51 note; no credits appeared on the books of the plaintiff on either the $5,040 or $5,980.51 notes except payments of interest on both to June 1, 1921."

"There was further evidence that about October 31, 1921, a mortgage covering the assets of the company was foreclosed by the plaintiff and the assets sold at auction at which an agent of the plaintiff bid in the property for $6,000. Upon the plaintiff's books, in court, no entry appeared relating to the $6,000 from the sale of the personal property at said

foreclosure sale.   The defendant testified that the sale of the assets did not include accounts receivable."

"During the progress of the trial, counsel for plaintiff stated in open court that the plaintiff's claim in this case (based on the guaranty which is Exhibit 1) is the recovery of $5,040, it being admitted by the plaintiff that the bid of $6,000 for the assets of the company wiped away the indebtedness of $5,980.51 due from the company, and that there then remained on the books of the plaintiff as due from the company $5,040.00."

Subject to the exception of the plaintiff "the defendant testified that about December 7, 1920, a United Belting & Supply Company gave the company a trade acceptance of between $5,000 and $5,500, which was delivered to the bank; and in response to a question whether the bank collected on it the answer was 'I presume so'; when asked 'What bank?' the defendant replied 'The Federal Trust Company; I can't identify that'; that about said date Rice & Hutchins Company owed the company from $250 to $500; that the United Shoe Machinery Company owed the company a very small amount; that the Bretney Company owed the company about $400 or $500; and the Central Supply Company owed the company about $180; that he never before or since this suit was brought, made any claim for credits represented by the above bills receivable or trade acceptance."

The plaintiff contends in support of its exception, in substance, that the evidence should not have been submitted to the jury because "All it amounts to is a mere surmise on the defendant's part that the plaintiff realized on the trade acceptance, and there appears no valid basis for such conclusion."   The evidence which was received in support of the defence that all indebtedness of the American Belting and Tanning Company to the Federal Trust Company was paid was admissible for the purpose offered.   Its weight was for the jury.   This exception, which is the only one to the admission or rejection of evidence, is overruled.

The principal exception argued by the plaintiff is to the charge of the judge in his review of the case upon the evidence; its contention being that the language used was calcu-

lated to arouse prejudice against it and excite sympathy for the defendant. The charge appears in the printed record. After a statement of the issues, to which no exception is taken, the judge continued: "It has been suggested in this case that you should steer clear of the fog, and that is a suggestion which I renew to you; that you should keep your eye centered upon the real aspects of this case in determining the underlying issues, as to whether payment of these notes has been made or not, and in proceeding to determine that issue, which is a pure issue of fact involving the exercise of your mental faculties, don't attempt to approach that and decide it in any mist or fog of emotion. The questions of the motives actuating this transaction may be a matter of interesting speculation, but they have no direct bearing upon the ultimate facts to be reached in this case. We are dealing with a business proposition entered into with business people and with business firms. I should say it does not make any difference in dealing with this question as to whether or not the Federal Trust Company was acting in this matter not as a banking institution but as an eleemosynary institution lending gratuitous aid to people in financial distress."

After a statement of the evidence the judge continued: "Now, as I say, it doesn't make any real difference in the adjudication of this case and the issues involved as to what the motives were behind this action, as to whether or not the bank in what it did was acting solely as a benefactor from altruistic motives, or whether it was acting from business motives in its own behalf, because you must bear in mind that before this matter came up the company was already indebted to the bank in the sum of $6,300. If this composition went through, and the bank had to get out of the transaction on the same basis as the creditors, all that the bank would have received would have been $1,260; in other words, on their original claim of $6,300, assuming they had gone through the matter on the same basis as the other creditors, they would have received $1,260, or they would have been out of pocket $5,040. Now, was the bank actuated purely by a desire to help Mr. O'Keefe or was it actuated by a desire to try and save something of that $5,040 which it would lose

if the matter went through on the same basis as in the case of the other creditors. If this was a purely charitable undertaking on the part of the bank, without any desire for any gain to itself, it is certainly a matter of gratification to know that that act of disinterested benevolence received its fullest reward in this world and didn't have to wait until the next, because if the plaintiff's claim is true and he is entitled now to get his $5,040 back, the result of this arrangement entered into would be that the bank would receive back the full amount, that is, $6,300 instead of coming in on the composition basis the same as the other creditors did and having $1,260 only."

As respects the quoted statement the plaintiff complains that it had no bearing on the matter at issue; that it was entirely irrelevant and its tendency was such as to put the jury in the frame of mind that if they found for the defendant the plaintiff would be no worse off than it was originally, i.e. at the time of the composition; and by way of an answer to the contention that any possible harm from the statement was overcome by the later statement of the judge, "I have been informed that there was testimony to the effect that Mr. O'Keefe was also personally an indorser of that obligation, and in so far as that affects any statement of the court with reference to that aspect of the case, the court withdraws any statement so made," says, "the impression having been once made, it would be very difficult, if not impossible, to obliterate it. The meaning of the language used was so pointed that it is evident the effect had been produced — the jury had perceived the bent of the court's mind, and it was not possible to eradicate the impression so as to place the jurors in that unbiased and disinterested state of mind which would enable them to fairly pass upon the issues before them."

The plaintiff directs attention to the part of the charge which reads: "So far as Mr. O'Keefe is concerned, it appears that he was in there for a few months receiving $100 a week, but other than that it does not appear that he received a cent from the assets of the company or that he has ever received the $1,453.97 which he was entitled to as creditor in his per-

sonal capacity with the American Belting and Tanning Company, the $1,453.97 that figured in this transaction having been paid to meet obligations of that company. So far as Mr. O'Keefe individually was concerned, it does not appear that he has at any time received the sum of $1,453.97 that would have come to him on a basis of twenty cents on the dollar. So whatever the motive may have been that prompted the bank in the beginning, it would certainly appear, if the plaintiff's contention in this case is correct, that it was an arrangement from which the bank has profited and is the sole beneficiary apparently in that arrangement"; and contends that the statement "was entirely irrelevant on the issue to be decided by the jury (payment) and the result inevitably increased the sympathy for the defendant. Payment of the money to Mr. Carroll, attorney for Mr. O'Keefe, was sufficient to protect the bank on this obligation, and it was not only unnecessary for the court to discuss the matter any further but it prejudiced plaintiff's cause materially."

The plaintiff further specifically indicates many other parts of the charge, which, heard in connection with the whole charge, it contends had a direct tendency to bias the jury against the plaintiff and thus prejudicially affect it during their deliberations.

It is patent that the provision of the Constitution, that judges shall be "as free, impartial, and independent as the lot of humanity will admit" and the provision of G. L. c. 231, § 81, that the "courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law," are not violated by "calling the attention of the jury to the degree of weight and importance to be attached to particular facts, if they are proved or admitted. To say that certain circumstances deserve to be seriously considered, or are entitled to great weight, is not expressing an opinion as to what facts have been proved, but only instructing the jury with regard to the relative materiality and importance of different portions of the evidence." *Durant* v. *Burt*, 98 Mass. 161, 168. It "is not a violation of the constitutional requirement . . . if the instructions, while judicially fair, are comprehensively strong, rather than hesitatingly barren or

ineffective," and, if no error of law appears, neither the tone of a charge nor the form of verbal delivery is of itself ground of exception. *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495, 502. *Commonwealth* v. *McDonald*, 264 Mass. 324, 334, 335.

On the other hand the parties to an action are entitled to a fair and unprejudiced submission of the testimony and the issues to the jury, without indication of the opinion of the judge upon the weight or effect of evidence or as to who should prevail upon any issue where a material fact is left in doubt by the testimony or there are inferences to be drawn from the facts in proof, save as such indication may flow from a clear analysis of the evidence and unbiased statements of testimony. Portions of the charge here assailed could not have failed to give the impression that the plaintiff was being held up to scorn and ridicule and to disclose the view of the judge, apart from impartial references to evidence, that the plaintiff ought not to prevail. It is obvious that the jury would so understand and thus be influenced in their subsequent deliberations. A careful study of the entire charge constrains us to the belief that the jury must have perceived the attitude, the bent of the mind of the judge, and that in all human probability they entered upon their final deliberations in a state of mind which was biased and interested. A further study leads us to the conclusion that the effect of the charge on the jury was not removed by any adequate instruction to disregard what had been said to them if it be assumed it were possible to eradicate the impression produced by the entire charge.

> *Plaintiff's exceptions sustained.*
> *Defendant's exceptions overruled.*