COMMONWEALTH vs. LANNY HANSCOMB.

Suffolk.   March 4, 1975. — May 12, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Rape.   Practice, Criminal,* Newspaper article, Fair trial, Charge to jury.   *Unnatural and Lascivious Act.   Constitutional Law,* Due process of law.

At the trial of an indictment for rape, there was no error in denial of a motion by the defendant for a mistrial alleging prejudicial publicity by reason of a front page article published by a Boston newspaper during a week-end recess of his Suffolk County trial regarding another trial in that county under the headline, "Judge chastises jury for rape acquittal," and containing quotations of the remarks by that judge and a characterization thereof as "a scathing denunciation of the attitude of jurors toward rape victims," where the judge at the defendant's trial promptly polled the jurors individually and, excepting one person who was excused, the jurors who had learned of such remarks affirmed their ability to decide the case according to the evidence.   [728-730]

Certain questioning of witnesses and comments by the judge during a criminal trial were not improper [730]; and although the judge mistakenly charged the jury that certain facts in the case were "undisputed," it did not mislead the jury in the context of the whole charge, which informed the jury that the finding of the true facts was solely for them [730-731]; HENNESSEY, J., concurring, but commenting that the judge's questioning of witnesses and charge to the jury went to the limit of his power in these areas [731-733].

G. L. c. 272, § 35, prohibiting an "unnatural and lascivious act" was not unconstitutional as applied to a defendant who by threats forced a woman to perform certain acts within the statute.   [731]

FOUR INDICTMENTS found and returned in the Superior Court on January 10, 1974.

The cases were tried before *Roy,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Malvine Nathanson* for the defendant.

*Louis M. Nordlinger*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant appeals from convictions of rape, kidnapping, armed robbery, and an unnatural act. He claims error under three headings: (1) prejudicial publicity, (2) unfair comments and questions by the judge during the trial and unfair comments in his charge to the jury, (3) unconstitutional vagueness of G. L. c. 272, § 35, prohibiting "any unnatural and lascivious act." We affirm the convictions.

We summarize the testimony. The victim testified that she was awakened in her apartment about 4 or 5 A.M. on June 15, 1973. The defendant lived in an apartment upstairs; naked, with a knife in his hand, he threatened her, forced her to have intercourse and to perform unnatural acts, took her television set, and forced her to accompany him while he drove her car. When he got out of the car, she drove away, went to the hospital where she worked as a nurse, and told nurses there and later the police what had happened. The defendant had left knives, money and his shirt in the car. Two police officers confirmed the victim's account of what she had told them, and one of them testified to finding a knife, money, and a shirt in the car. A hospital record showed that the victim had been admitted for examination at 5:50 A.M. and that the doctor found no sperm. The defendant testified that he was with the victim earlier in the evening, but denied having any physical or sexual contact with her or being in her car. He said he had left to join his wife in Canada the same day, and had returned and voluntarily gone to the police in July when he learned there was a warrant out for him.

The case was tried to a Suffolk County jury on Thursday and Friday, May 16 and 17, 1974, and when the defense rested the jury were excused until Monday, May 20. On Saturday, May 18, a Boston newspaper carried a front page article under the headline, "Judge

chastises jury for rape acquittal," reporting remarks made on May 17 by a Superior Court judge to another Suffolk County jury who had just acquitted a defendant in a rape case where consent was in issue.   The article characterized the remarks as "a scathing denunciation of the attitude of jurors toward rape victims," and quoted them at some length, e.g.: "It is almost impossible . . . to get a conviction of rape by jurors of Suffolk County in the most atrocious and violent rapes that occur upon our young women." When "we have a trial, instead of trying the defendant, you make the poor girl the defendant." Jurors "won't find a defendant guilty unless there is no possibility they are wrong — and that is the wrong standard." Rape "is going to continue until jurors by their verdicts convict and punish, when the evidence is overwhelming, as I think it was in this case."

On Monday, May 20, the defendant moved for a mistrial.   The judge then brought in each juror individually for questioning.   Three jurors did not know about the remarks.   Eleven had learned of them through the newspaper, radio or television, or a friend; all but one of these said that the knowledge would not prevent the juror from making a fair and impartial decision in the case on trial.   The judge excused one juror who said, "I have the feeling if I found him guilty it would be because of what the other judge said."   The motion for a mistrial was denied.

The defendant appealed to the Appeals Court from his convictions under G. L. c. 278, §§ 33A-33G, and the case was transferred to this court on our own motion under G. L. c. 211A, § 10 (A).

1. *Prejudicial publicity.*   As the defendant points out, most cases of prejudicial publicity involve publicity about the defendant or the specific facts of the case.   See *Commonwealth* v. *Stanley*, 363 Mass. 102, 105-106 (1973), and cases cited.   The danger of prejudice is less where the publicity is "cast in fairly general terms" and does "not specifically relate to the proceedings before the

court." *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 297 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts,* 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U. S. 914 (1972). See *Commonwealth* v. *McGrath,* 364 Mass. 243, 244-246 (1973), where the trial judge had earlier made critical remarks to a different jury in an unrelated case, apparently drawn from the same jury pool; *Commonwealth* v. *Smith,* 350 Mass. 600, 611-613 (1966), where a murder trial went forward after news of the assassination of President Kennedy. Cf. *People* v. *Krueger,* 99 Ill. App. 2d 431, 444 (1968). In *Wiley* v. *State,* 332 S. W. 2d 725, 726 (Tex. Crim. App. 1960), however, a murder conviction was reversed because the jurors read a news story about other murders.

In the present case the thrust of the remarks claimed to be prejudicial was that a defendant should be convicted when the evidence against him is overwhelming. If, as seems likely, the jury in the present case thought the evidence of guilt was overwhelming, such remarks might influence them toward conviction, but encouragement to the jurors to do their duty is not the kind of prejudice of which the defendant is entitled to complain. The danger to be avoided was rather that jurors might misinterpret the remarks as pressure for conviction in rape cases without regard to guilt. That there was such a danger is shown by the fact that one of the jurors apparently felt such pressure. The danger was reinforced by the timing of the publicity just after the close of the evidence and just before deliberations began.

The judge recognized the possibility of prejudice, and promptly polled the jurors individually. This was the proper course. *Commonwealth* v. *Crehan,* 345 Mass. 609, 615 (1963). *Commonwealth* v. *Eagan,* 357 Mass. 585, 589 (1970). *Commonwealth* v. *Stanley, supra,* at 103-104. He was not required to extend the inquiry once a juror affirmed his ability to decide the case according to the evidence. Jurors may not be sufficient judges of

their own bias when they have been exposed to highly significant information, such as a confession or prior conviction of the defendant, or to material which would furnish ground for a mistrial if referred to in the trial itself. See A. B. A. Standards Relating to Fair Trial and Free Press, commentary at § 3.5 (f) (Approved Draft 1968); *Commonwealth* v. *Stanley, supra,* at 109-111 (Reardon, J., dissenting). But there was no such exposure here.

The defendant argues that cautionary instructions should have been given, though he also argues that the prejudice could not have been minimized by such instructions. We reject both arguments. The likelihood of harm may increase with cautionary instructions. See *Commonwealth* v. *Stanley, supra,* at 111 (Reardon, J., dissenting). The defendant did not request such instructions, and took no exception to the failure to give them. He is therefore in no position to complain of error in this respect. See *Commonwealth* v. *Daniels,* 364 Mass. 829 (1973).

2. *Bias of the judge.* It would add little to our jurisprudence to discuss in detail the defendant's attacks on the judge's questioning of witnesses, his comments during the trial, and his charge to the jury. He could properly interrogate witnesses, even though some of the answers may have tended to reinforce the Commonwealth's case. *Commonwealth* v. *Haley,* 363 Mass. 513, 520 (1973). *Commonwealth* v. *Fiore,* 364 Mass. 819, 826-827 (1974). Neither his questions nor his comments went beyond permissible limits or displayed bias or a belief in the defendant's guilt. *Commonwealth* v. *Leventhal,* 364 Mass. 718, 723-724 (1974), and cases cited. His charge to the jury, taken as a whole, fairly presented the case to the jury. See *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 520-521 (1972); *Commonwealth* v. *Whooley,* 362 Mass. 313, 319-320 (1972); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 10-11 (1974).

One point deserves elaboration. In the course of his charge, the judge said, "It is undisputed that this young lady, as she says, was confronted — sleeping peacefully in her own bed and in her own apartment — was confronted by a man with a knife or knives in his hand." The victim had so testified, and had identified the man as the defendant, a neighbor known to her. The defendant had denied participating in such an incident. The matter was therefore not "undisputed." But the judge had previously told the jury that they were the judges of the facts, that the rulings, remarks and questions of the judge were not to be regarded as any indication as to how they should decide the case, that there were "two completely contradictory statements of evidence," that it was for them to sort out this testimony and decide what the true facts were, that the defendant had testified "that nothing of a sexual nature occurred between them," and that if the jury's memory of the evidence was different from that of the judge, theirs controlled. Presenting them with a series of factual questions raised by the two contradictory accounts, he several times said, "That's for you to say," or the equivalent. We do not think the jury could have been misled by the one mistaken word "undisputed." Cf. *Commonwealth* v. *Myers*, 356 Mass. 343, 348-349 (1969).

3. *Vagueness of "unnatural and lascivious act."* The question of the constitutionality of G. L. c. 272, § 35, has been disposed of by our decision in *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974). No issue of consent was raised, and the statute is not vague as it applies to the acts of the defendant.

*Judgments affirmed.*


HENNESSEY, J. (concurring). I have considered with particular concern the defendant's argument that the trial judge revealed to the jury partiality in favor of the Commonwealth, as shown by the judge's questioning of

witnesses and his charge to the jury.[1]   I conclude that there is no ground for reversal, but in my view the question is a close one.

The defendant argues, with some measure of persuasiveness based on this record, that the number and nature of questions addressed by the judge to the witnesses reflected his belief in the credibility of the complaining witness and his disbelief of the defendant's testimony. The judge need not be mute; he is more than a referee. Justice may require that he ask questions at times. However, the primary principle in jury trials is that he must use this power with restraint. "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.'" *Quercia* v. *United States*, 289 U. S. 466, 470 (1933).

The defendant further argues that the judge also revealed his partiality in his charge to the jury, in the way he marshalled and discussed the evidence in the case.   Our decisions have consistently upheld the action of trial judges in putting before the jury possible conclusions warranted by the evidence in language that is comprehensively strong rather than hesitatingly barren or ineffective.   *Cahalane* v. *Poust*, 333 Mass. 689, 692-693 (1956).   We have also said that where, as can be fairly said of the instant case, there are strong reasons for believing that one or some aspects of the case should be emphasized, a charge embodying such emphasis will be sustained even though going to the verge of propriety. See *Commonwealth* v. *McDonald*, 264 Mass. 324, 335 (1928).   On the other hand, we have also said, in

[1] In particular the defendant points to (1) the trial judge's extensive questioning of him as to "flight" the morning following the rape, the answers to said questions being given added emphasis by the judge's charge; (2) certain of the judge's statements made during the questioning of other witnesses including the complainant; and (3) the judge's summarizing of evidence in his charge which the defendant argues tended to be slanted in favor of the Commonwealth.

holding that a charge was improper, that "[a] careful study of the entire charge constrains us to the belief that the jury must have perceived the attitude, the bent of the mind of the judge, and that in all human probability they entered upon their final deliberations in a state of mind which was biased and interested." *Federal Natl. Bank* v. *O'Keefe*, 267 Mass. 75, 83 (1929). The guiding principle must be even-handedness.

In commenting that this case went to the limit of the judge's privileges, I appreciate that we are here discussing matters which more often than not require decision by the judge without opportunity for deliberation. I appreciate, too, that the most conscientious judge, one who is not content to leave vital questions unasked and not content to deliver a sterile charge, is perhaps most likely to come close to exceeding his powers in these areas.