COMMONWEALTH vs. GERALD B. BUCKLEY, JR.

Essex. October 7, 1983. — January 13, 1984.

Present: GRANT, KASS, & WARNER, JJ.

*Practice, Criminal,* New trial, Instructions to jury, Fair trial. *Evidence,* Relevancy and materiality, Prior conviction, Unresponsive answer.

At the trial of a criminal case, it was reversible error for the judge to instruct the jury concerning a prior sentence the defendant had received and its relationship to time the defendant had actually spent in prison. [375-377]

Reversing criminal convictions on other grounds, this court found it unnecessary to determine whether there was reversible error at the trial of a criminal case in the judge's interrupting the trial to conduct an unrelated arraignment in the presence of the jury. [377-379]

On appeal of a criminal case this court expressed misgivings concerning the interruption of the trial for a brief jocose welcome of a new Superior Court judge. [379]

At the trial of a criminal case it was improper for a police officer, when asked whether he had given the defendant Miranda warnings, to comment on the defendant's exercise of his right to remain silent. [379-380]

At the trial of indictments charging rape and assault and battery by means of a dangerous weapon, there was no error in permitting a prosecution witness to testify that "girls have been raped" in the area in question and that the witness kept her door locked because she lived in "a very bad area." [380]

Comments concerning a criminal defendant's claim that the trial judge, in instructing the jury respecting the defendant's prior convictions for kidnapping and "another felony," arising from a single incident, made it appear that the defendant had been convicted on two separate occasions. [380-381]

INDICTMENTS found and returned in the Superior Court Department on July 2, 1979.

The cases were tried before *Garrity,* J., and a motion for a new trial was heard by him.

*Kimberly Homan* (*Elizabeth A. Lunt* with her) for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

KASS, J. Two years elapsed before the defendant, Buckley, moved for a new trial after conviction by a jury of rape and assault and battery by means of a dangerous weapon. That time interval engenders an initial skepticism about the defendant's argument, made in his brief, that his "trial was a mockery of justice" which deprived "the defendant of the serious attention his fate deserved and [permitted] extraneous influences to impinge fatally upon the jury's deliberative processes." At least the gravity of the deficiencies in the trial appears to have escaped the notice of trial counsel who, in the main, did not object to the matters about which appellate counsel now complains. Indeed, review of the entire transcript discloses that appellate counsel's characterization of the proceedings is much overdrawn. There were, however, lapses, one of which was fatal and requires reversal; others invite comment.

Contrary to the Commonwealth's urgings that all the defendant's points are lost for failure to object, except as they may be reviewed to prevent a substantial risk of a miscarriage of justice (see, *e.g., Commonwealth* v. *Harris,* 371 Mass. 462, 471-472 [1976]), the issues were restored to the appellate agenda by the trial judge's extensive consideration of them (in a sixteen-page memorandum of decision) on the defendant's motion for a new trial. If trial counsel raises errors in a motion for a new trial which could have been — but were not — raised at trial, the trial judge should not consider them unless "upon sober reflection it appears that a miscarriage of justice might otherwise result." *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980). Cf. Mass. R.Crim.P. 30(b), 378 Mass. 900 (1979). Once a judge exercises his discretion and considers, in the context of a motion for a new trial, issues previously lost for appeal, those issues are resurrected and preserved for appellate review as if brought on direct appeal. *Commonwealth* v. *Gagne,* 367 Mass. 519, 525-526 (1975). *Commonwealth* v. *Harrington, supra,* at 449. *Commonwealth* v. *Donovan,* 15 Mass. App. Ct. 269, 273-274 (1983).

1. *References to Time Served and the Parole Formulae.*

From cross-examination of the defendant, the jury had learned that he had been convicted of crimes before.[1] After some three hours of deliberation, the jury asked several questions, the third of which was: "Did he [i.e., the defendant] ever serve any time?" To this the judge answered:

> "Yes. Twelve years and a day in Concord, which doesn't mean anything. He spent a year behind bars.
> "All right? With me so far?
> "Like somebody — say if you give somebody life for murder. You know, they might serve a week or two. No. If you give somebody life for murder, its about fifteen or twenty years.
> "If somebody gets, say, five to seven in Walpole — it's two thirds of the five if its a violent crime. If its not a violent crime it's one third.
> "You almost need a lawyer sometimes — if you're a judge — to figure out what the sentence really means.
> "But what it really means in this defendant's case is that he served a year in jail."

Sentencing and parole consequences are matters with which a jury should have no concern. The jury's job is to find facts and, applying those facts to the legal standards about which the jury have received instruction, to determine guilt or innocence. *Commonwealth* v. *Goodwin,* 356 Mass. 632, 633-634 (1970). *Commonwealth* v. *Ferreira,* 373 Mass. 116, 124-125 (1977). *Commonwealth* v. *Smallwood,* 379 Mass. 878, 882-883 (1980). *Commonwealth* v. *Loring,* 14 Mass. App. Ct. 655 (1982). Compare *Commonwealth* v. *Mutina,* 366 Mass. 810, 817-823 (1975) (upon timely request of a defendant, the trial judge shall instruct a jury about the consequences of a verdict of not guilty by reason of insanity). It was error, therefore, to discuss the defendant's prior sentence

---

[1] The defendant had been previously convicted of rape and kidnapping. The conviction of rape, as is more fully discussed below, was kept from the jury.

and its relationship to time the defendant actually spent in prison.

The next question from the jury was: "What are the penalties involved for the crimes Buckley is charged with?" This time the judge correctly isolated the jury's function. He replied:

> "Respectfully, none of your business.
>
> "You have to decide the case irrespective of what the penalty is — whatever it is — because who knows what will happen if you find him guilty?
>
> "If you find him innocent it's another thing.
>
> "But if you find him guilty, who knows? Sentencing is — it's my function. And it's probably the toughest part of my job to sentence somebody. And sentencing depends on a whole series of factors. And one of the factors is what is the penalty. And the penalty has nothing to do with your job. It might prejudice you one way or another if you knew it. You might come down too hard or too easy.
>
> "So I'm not going to tell you. Fair enough?"

By then, however, the cat was out of the bag. From an authoritative source — the judge — the jurors had received a short lecture about how parole dates are calculated. The import of the judge's explanation was that Buckley, if convicted, was unlikely to serve his entire sentence and that, even in relation to a heavy sentence, the time to be served might be quite light. Such could be inferred from the information that Buckley had served one year on a twelve-year sentence for a serious crime, kidnapping.[2]

Logically the information should not have affected the jury's deliberations. Buckley's defense to the indictment for rape had been one of consent. The jury's task, therefore,

---

[2] We do not pass on the correctness of what the judge told the jury about what fraction of a sentence a prisoner must serve. A person serving a life sentence for murder in the first degree, for example, is not eligible for parole.

was to decide whether they believed the victim's or the defendant's account of the circumstances in which sexual intercourse occurred. Manifestly, however, the jury in this case were interested in sentencing and parole; they asked questions about them. For that reason we can scarcely write off the judge's disquisition on punishment as immaterial. Here, as in *Commonwealth* v. *Ferreira,* 373 Mass. at 127, there was a "classic duel of credibility," and it requires little imagination to suppose that the jury were assisted in resolving doubts about the facts because they thought the defendant's imprisonment might not be all that long. *Lovely* v. *United States,* 169 F.2d 386, 391 (4th Cir. 1948). *United States* v. *McCracken,* 488 F.2d 406, 423-424 (5th Cir. 1974). "When we consider . . . that a very slight circumstance may affect the verdict, the danger from putting before the jury anything that may improperly influence their deliberations becomes more apparent." *United States* v. *Patrick,* 494 F.2d 1150, 1154 (D.C. Cir. 1974), quoting from *Miller* v. *United States,* 37 App. D.C. 138, 143 (1911).

2. *The Arraignment.*

On the last day of trial, i.e., when the jury heard argument and the charge, it became necessary to conduct arraignment proceedings involving another defendant. The prosecutor assigned to the arraignment suggested that the jury sitting on the Buckley case be excused, but the judge thought this unnecessary. The man being arraigned was under indictment for murder and assault with intent to rape. Rape is never pretty, but the crime with which the other defendant was charged was particularly loathesome and had involved the forcible abduction of a thirteen year old girl.

Buckley's argument is that the arraignment poisoned the atmosphere in which the Buckley jury received the case; i.e., here was another abduction and rape; the other defendant was a recidivist, Buckley was a recidivist (although the jury could only guess that Buckley's prior offense involved sex). Thus, the argument runs, extraneous influences had come to bear on the jury and the Commonwealth had not established beyond a reasonable doubt that they were not preju-

dicial to the defendant. See *Commonwealth* v. *Fidler,* 377
Mass. 192, 201 (1979); *Commonwealth* v. *Ciminera,* 11
Mass. App. Ct. 101, 108 (1981). Moreover, the defendant
urges, the timing was particularly harmful to him. See
*Commonwealth* v. *Hanscomb,* 367 Mass. 726, 729 (1975). It
may well be that the jurors were not infected by the arraign-
ment. The other defendant and Buckley were not carbon
copies of each other. One was a study in depravity. He
was wretched, down and out, and looked it. Buckley was
relatively young, well-dressed, and well-spoken. He had
not — as the other was alleged to have done — snatched a
girl from her bicycle. Rape in Buckley's case was alleged
after some concededly consensual dalliance, drinking, and
smoking of marihuana. It is not to be supposed that the jur-
ors on Buckley's case harbored the illusion that they were
sitting on the only rape case in Essex County. We also have
in mind that jurors are not automatically disqualified from
service on a case because they have heard a similar case be-
fore. *United States* v. *Carranza,* 583 F.2d 25, 28 (1st Cir.
1978). Cf. *Commonwealth* v. *Hanscomb,* 367 Mass. at
728-730. Unlike the *Hanscomb* case, however, it was not
possible (because the defendant had not objected) to poll the
jury so as to find out if damage had been done. See *Com-
monwealth* v. *Jackson,* 376 Mass. 790, 800 (1978), which
describes how jurors exposed to extraneous materials should
be questioned to determine the degree of prejudice which
may have adhered. Consequently, the Commonwealth has
little except argument to meet its burden, and we cannot
eradicate some disquiet about the impact of the other defend-
ant's arraignment. Compare *Commonwealth* v. *Cameron,*
385 Mass. 660, 669 (1982); *Commonwealth* v. *Langton,* 7
Mass. App. Ct. 692 (1979).

In view of our decision that the discussion about time
served, punishment, and parole was reversible error, it is
not necessary to resolve the arraignment issue definitively.
It must be obvious, however, that it is unwise to conduct
unrelated criminal business before a jury sitting on a crimi-
nal case. The risk is too great that something will be said or

seen which may spill over into the case which the jury is hearing.

3. *The Welcoming Ceremony.*

During the course of the trial, the judge interrupted the proceedings to welcome a new Superior Court judge. The brief ceremony was jocose. There was an encomium by the trial judge to the new judge's powers as a prosecutor, which included the observation that, when the trial judge had been a practicing lawyer, the new judge, as a prosecutor, had sent many of the trial judge's innocent clients to jail. As in-group banter, this was all unexceptionable. In the presence of the jury it was regrettable at best. See *Commonwealth* v. *Stanton, ante* 1 (1983). Doubtless the defendant found it hard to join in the fun. *Id.* at 8 (Brown, J., concurring). As in *Commonwealth* v. *Stanton, supra,* at 4-5, however, it is simply not plausible that the jury were derailed. It is enough to remark here that the levity, in the presence of the jury, the defendant and his wife, was misplaced. In making that observation, we do not confuse seriousness with gravity. It is a matter of context.

4. *Other Matters.*

Eight other issues were argued by appellate counsel and, like the issues already discussed, are before us only because they were considered in the extensive memorandum written by the trial judge in response to the motion for a new trial. None of those matters constituted reversible error. Three points merit comment because they might recur on a new trial.

(a) In response to a question whether he had advised Buckley "of his [Miranda] rights," the arresting officer went far beyond the "Yes" which sufficed. He added, "He was handcuffed, put in the rear of the cruiser. He was given his Miranda warning and asked if he wished to make any comments in regards to the arrest. He said, 'No.'" The answer was improper and, had defense counsel moved to strike, would no doubt have been struck. Buckley had a right to remain silent, and the Commonwealth's witnesses should not have called attention to his exercise of that right by com-

menting upon it, thereby inviting the jurors to draw "an adverse inference from [the defendant's] failure to deny his guilt." *Commonwealth* v. *Haas,* 373 Mass. 545, 559 (1977). See also *Doyle* v. *Ohio,* 426 U.S. 610, 617-618 (1976); *Commonwealth* v. *Nickerson,* 386 Mass. 54, 59 n.5 (1982); *Commonwealth* v. *Aparicio,* 14 Mass. App. Ct. 993 (1982). Compare *Commonwealth* v. *Valliere,* 366 Mass. 479, 488-489 (1974).

(b) When the victim emerged from the woods to which she had been taken by the defendant, she went to the first house she saw to use a telephone. That house belonged to a Ruth Walker, whom the Commonwealth called as a fresh complaint witness. Walker, an effective witness for the prosecution, was allowed to say that "girls have been raped in this area" and to explain that she kept her door locked because she lived in "a very bad area." In context, particularly as it explained testimony drawn from the victim when she was cross-examined, this testimony was relevant and we are unpersuaded by the defendant's protest that it was prejudicial. Indeed, Walker's testimony laid the basis for a defense theory that Walker had put rape in the victim's mind.

(c) Four and a half months before the incident involved in the instant case, the defendant had been paroled from confinement on prior convictions of rape and kidnapping, arising out of a single incident. He made a motion in limine to exclude the prior convictions. The judge could properly have admitted both convictions. *Commonwealth* v. *Diaz,* 383 Mass. 73, 75-82 (1981). Of the two, the one for rape would have been the more damaging to the defendant. At defense counsel's suggestion, when it came time for the defendant to be cross-examined, the jury were permitted to hear only that Buckley had previously been convicted of kidnapping and "another felony." On appeal the defendant complains that the judge, in his charge and in response to a jury question, made it sound as if the defendant had been convicted on two occasions. Arguably this created a more adverse impression than a history of one prior criminal episode, although binding the "other felony" to the kidnap-

ping would have been a clue that the "other felony" was rape.  If the judge wished to protect the defendant he should have made it clear that the two prior convictions arose out of a single episode.  Of course, at a new trial, a different judge may decide to admit the prior rape conviction in evidence.  He might wish to exclude one or both of the convictions.  We do not mean to intimate by what we have said above that the judge's discretion would be limited in that regard.

*Judgments reversed.*

*Verdicts set aside.*