EVA PANNETON *vs.* JEAN G. E. PANNETON, administrator.

Bristol.     October 25, 1948. — December 7, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Marriage and Divorce,* Common law marriage.

A finding that a man and a woman, who cohabited in Rhode Island without any marriage ceremony, had not contracted a common law marriage in that State and under its laws was warranted where there was evidence that the relationship between the parties was meretricious in its origin and was intended so to continue until some marriage ceremony should be performed in the future.

PETITIONS, filed in the Probate Court for the county of Bristol on October 1, 1946, and on March 28, 1947.

The cases were heard by *Poland,* J.

*M. Klein,* (*F. Kavolsky* with him,) for the petitioner.

*A. E. Seagrave,* (*A. E. Beaulieu* with him,) for the respondent.

WILLIAMS, J. The petitioner, representing that she was the widow of Victor N. Panneton, late of Somerset, petitioned

the judge of the Probate Court for Bristol County to vacate a decree appointing Jean G. E. Panneton administrator of the estate of said deceased and by a second petition sought a widow's allowance. Victor died on December 31, 1945. The respondent, a brother of the deceased, was appointed administrator on January 4, 1946, his petition alleging that the only heirs at law and next of kin were a brother, a sister and three nephews. After hearing, the judge found that the petitioner was not the widow of the deceased, dismissed the petition to vacate, and denied the petition for an allowance. The petitioner has appealed. The evidence is reported.

The petitioner contends that, although never married to the deceased at any ceremony, civil or religious, she became his wife in Rhode Island by virtue of the law of that State pertaining to common law marriages. Her testimony is summarized as follows. Her name was Eva Agnes Larose. She lived in Montreal and met Victor Panneton there in 1916 while he was studying at the university. She saw him almost daily until the end of 1917 when he went to Providence. Her relations with him were "intimate," although "we didn't live together but I went out with him." From Providence he returned to visit her in Montreal every two or three months until 1924. In 1925 he wrote to her "to come down and get married in Providence, Rhode Island." She went to Providence on February 7, met Victor and spent two days with him at a hotel. After that they talked about marriage and he rented an apartment. He gave her a wedding ring and they went to the cathedral for the purpose of getting married. The priest, however, refused to marry them unless they obtained papers showing that neither one had been married before. After that "we didn't bother about it and just let it go." Thereafter they lived together as husband and wife in Rhode Island, she assuming the name of "Mrs. Victor Panneton," until after Victor graduated from the Rhode Island College of Pharmacy in June, 1926. She "figured" that she was married. "Q. You figured you would have a ceremonial marriage sometime? A. I did, but he died before we went through with it." They lived together in Chicago through 1928, in Montreal

during 1929 and 1930, in Apponaug and Providence, Rhode Island, about two years, and finally in Somerset, Massachusetts, until 1939. During these years she was introduced by the deceased to his brother, sister, friends and associates as his wife. In 1939, while at Somerset, as a result of some trouble over Jean, the brother-in-law, being with them, she went to Montreal and when she returned she found the house where they had been living empty. She returned to Montreal, having told Victor she would never come back again. Thereafter she never saw him.

The law of Rhode Island in reference to common law marriages was presented to the court through the testimony of experts. It appeared that although the requirements for such marriages had been discussed by the Supreme Court of Rhode Island in *Peck* v. *Peck*, 12 R. I. 485, *Odd Fellows' Beneficial Association* v. *Carpenter*, 17 R. I. 720, and *Williams* v. *Herrick*, 21 R. I. 401, their validity in Rhode Island was first decided in *Holgate* v. *United Electric Railways*, 47 R. I. 337, in 1926. Later decisions affirmed the law as therein stated. See *Ibello* v. *Sweet*, 47 R. I. 480; *Andrews* v. *Edwards*, 51 R. I. 232; *Silva* v. *Merritt, Chapman & Scott Corp.* 51 R. I. 30. The "parties must agree to become husband and wife *presently*. The consent which is the foundation and essence of the contract must be mutual and given at the same time, and it must not be attended by an agreement that some intervening thing shall be done before the marriage takes effect, or that it be publicly solemnized. That is to say, it must contemplate a present assumption of the marriage status, in distinction from a mere future union." *Odd Fellows' Beneficial Association* v. *Carpenter*, 17 R. I. 720, 722. In "order to constitute evidence from which a marriage may be inferred, the origin of the cohabitation must have been consistent with a matrimonial intent, and the cohabitation must have been of such a character, and the conduct of the parties such, as to lead to the belief in the community that a marriage existed, and thereby to create the reputation of a marriage. . . . To prove a marriage by cohabitation and reputation, the reputation must be general and uniform." *Williams* v. *Herrick*, 21 R. I. 401, 402, 403.

"A common law marriage may be shown as an inference of fact from cohabitation, declarations, and reputation among friends and kindred." *Holgate* v. *United Electric Railways*, 47 R. I. 337, 340. Where previous illicit relations existed between the parties, in the "absence of clear proof to the contrary the presumption of law is that such meretricious relation continued." *Ibello* v. *Sweet*, 47 R. I. 480, 482.

The petitioner offered corroborative testimony by persons who knew the parties in Rhode Island that the petitioner was introduced by the deceased as his wife and that she was assumed by their acquaintances to be his wife. There was also put in evidence a deed of real estate to Victor and Eva, husband and wife, as grantees, and two insurance policies, one on her life in which reference was made to Victor as her husband, and one on his life in which reference was made to her as his wife. Evidence offered by the respondent was to the effect that, while the brother and sister of the deceased knew that he was living with the petitioner, she was never introduced as his wife, and that the deceased, shortly before his death, stated that he was unmarried.

The cases presented questions of fact for the judge. It cannot be said that the evidence was so clear and convincing that the judge was bound to find that the relationship of husband and wife existed under Rhode Island law. *Holgate* v. *United Electric Railways*, 47 R. I. 337, 339. He could find that the relationship between the parties was meretricious in its origin and was intended so to continue until some marriage ceremony should be performed in the future. The decrees dismissing the petition to vacate and denying the petition for a widow's allowance are

*Affirmed.*