COMMONWEALTH *vs.* JOHN J. WHOOLEY.

Suffolk.    May 3, 1972. — July 13, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Trial of defendants together, Charge to jury.
*Constitutional Law,* Confrontation of witnesses. *Evidence,* Acts
and statements of accomplice, Common criminal enterprise. *Joint
Enterprise. Confining for Purpose of Stealing.*

In a criminal proceeding for confining and putting in fear a store
employee with intent to steal from the store safe, and for com-
pelling her to divulge the means of opening the store safe, with
like intent, a defendant was not entitled to a separate trial from
a codefendant by reason of acts and statements by the codefendant
to the employee while the crime was being committed where all
the evidence warranted a finding that the defendant and the co-
defendant were acting in concert in committing the crime [317];
and in the discretion of the judge such evidence of acts and state-
ments could be introduced before a foundation of other evidence
showing that the defendant acted in concert with the codefendant.
[317–318]

At the trial of an indictment for confining and putting in fear a
store employee with intent to steal from the store safe, and for
compelling her to divulge the means of opening the safe, with like
intent, evidence warranted a finding that the defendant, acting
in concert with others, was guilty. [318–319]

At a criminal trial, the charge to the jury, considered as a whole, was
not defective where the judge clearly corrected an inadvertent
misdescription of the crime charged and where his use of exam-
ples of joint criminal activities did not give a misleading impres-
sion of the liability of some participants for the acts of others.
[319–320]

INDICTMENT found and returned in the Superior Court
on April 14, 1970.

The case was tried before *Hudson, J.*

*John P. White, Jr.,* for John J. Whooley.

*Robert Snider,* Assistant District Attorney, for the
Commonwealth.

QUIRICO, J.    Separate indictments against John J.
Whooley and David G. Murphy, Jr., charged that on
March 4, 1970, with intent to commit larceny, they con-

fined and put in fear one Josephine Votta for the purpose of stealing from a safe in a building of Sears, Roebuck and Co., and that, with intent to commit larceny, they compelled Miss Votta, by intimidation, force and threats, to disclose and surrender the means of opening the safe. G. L. c. 265, § 21. They were both convicted at a trial held under the provisions of G. L. c. 278, §§ 33A–33G. Although the appeals of both defendants are before us, this opinion is limited to the appeal of Whooley (the defendant).[1] The errors alleged and argued by the defendant relate to the denial of his motion for a separate trial, the admission of certain evidence against him, the denial of his motions for directed verdicts, and the judge's instructions to the jury.

We summarize the evidence pertinent to the issues requiring our decision. On Wednesday, March 4, 1970, and for some time prior thereto, Miss Votta was employed as the manager of the cashier's office at the store of Sears, Roebuck and Co. at 201 Brookline Avenue, in Boston. The office included a room referred to as a vault in which there were two large metal safes equipped with a burglar alarm system. Before Miss Votta left her work about 5:30 P.M. on that day, she locked the vault and safes with their combinations, secured the office doors and windows, and turned on the burglar alarm. There was then about $175,000 in United States currency in the vault or the safes at that time.

Upon leaving the office, Miss Votta went to her car in the store employees' parking lot and found that the car doors which she had locked that morning were now unlocked. The car engine would not start. The hood was ajar, and upon opening it she found that the battery cable was disconnected so she reconnected it. About this time two men walked behind her car to a small guard shack about twenty or twenty-five feet away and then watched her through a window of the shack.

---

[1] The case against Murphy has been remanded to the Superior Court for findings of fact in relation to rulings on his pre-trial motion to suppress evidence.

As Miss Votta started to enter her car a man pointed
a gun at her and told her to shut up and get in the car.
When she did so, the man also entered, sat to her left
behind the steering wheel and held the gun on her. A
second man whom she later identified as Murphy entered
and sat to her right in the front seat. Since the validity
of this identification is the subject of Murphy's pending
appeal we will hereinafter refer to this individual only as
the "accomplice." A third man whom she has never iden-
tified entered and sat in the rear seat. The men told her
that they knew who she was, they knew there was "a lot
of money in the vault," and that they wanted the com-
binations to the vault and to the two safes inside the vault.
The accomplice sitting to her right gave her two pieces of
paper and a pencil to use in writing the combinations.
They told her to hurry and, as she started to write, the
car was driven out of the lot to a nearby street where it
stopped at the curb. She finished writing the combina-
tions and gave the papers to them. They asked her ques-
tions about the safes, the location of the money and
whether it was in a bag. She answered their questions
and told them they would not be able to get into the safe
containing the money because it was connected to an
"ADT" alarm. They said they could take care of that.
The man in the driver's seat and the man in the rear
seat then left the car. All of this had taken ten to fifteen
minutes from the time they first entered the car. The
accomplice remained with Miss Votta in her car and
from that position she could see that the lights were on
in her office.

About one-half hour later the two men returned in a
second car which stopped behind Miss Votta's car. The
man who had driven her car to that spot again took the
driver's seat of her car. He asked for a key which was
also needed to open the safe containing the money, and
for more information about opening that safe. He then
drove her car down the street about one block and stopped
at the curb. The second car followed and again stopped
behind hers. The man who had previously been in the

rear seat of her car then left the second car and entered
the rear seat of her car. She gave the men the infor-
mation they requested about opening the safe containing
the money, and told them where the keys to that safe
were. After about five or six minutes the same two men
left in the second car, again leaving Miss Votta in her
car with the accomplice. About one-half hour later a car
came along the side of Miss Votta's car and the accom-
plice jumped out, got in the other car, and it left the
scene.

We now turn to the evidence of events which occurred
in or near Miss Votta's office while she was seated in her
car with the accomplice and shortly thereafter. The ADT
alarm on the safe containing the money sounded at
6:21 P.M. About 6:30 P.M. a store employee heard and
saw the defendant, who was wearing a brown leather
jacket, run from the direction of the cashier's office, and
go down a corridor and into the ladies' room. About the
same time one John Green, a security officer at the store,
went to the cashier's office and saw that the outer door
to the vault was ajar and that the office window was open.
After speaking to the other employee he went into the
ladies' room and came out carrying a brown duffle bag.
The Boston police department was called and its officers
Doherty and Conte arrived in about five minutes. Green
and these officers searched the ladies' room and found a
man's brown leather jacket hanging in a utility closet
used by cleaning women. Officer Doherty saw the defend-
ant on top of a ventilation duct near the ceiling of the
ladies' room. He ordered him down and brought him to
an office to await the arrival of the police van. The de-
fendant was then wearing a sweater but no jacket. He
asked the police if he could have his jacket back but they
did not give it to him. In going through the pockets of
the jacket, the police found the pieces of paper on one of
which Miss Votta had written the combinations of the
safes and which she had given to the men in her car
earlier that evening.

The first alleged error argued by the defendant is the denial of his motion for the severance of his trial from that of the accomplice. His argument on this point is based entirely on the decision of *Bruton* v. *United States*, 391 U. S. 123, which held that it was error in a joint trial of two defendants in a United States District Court to admit in evidence the confession of one defendant in which he inculpated the other defendant, even though the judge carefully instructed the jury that the confession was admitted only against the confessor.[2] Since the accomplice made no confession whatever in this case, the rule of the *Bruton* case has no application. The defendant argues that the same rule should be applied to evidence of acts and statements by the accomplice to Miss Votta while he confined her in her automobile on the date of the crime and while the alleged crime was being committed. We do not agree. The evidence permits an inference that the accomplice and other persons were acting in concert in committing the crime, and it permits the further inference that the defendant was one of the other persons. Therefore, the acts and statements of the accomplice in the commission of the crime, or his part of the commission of the crime, could be shown against the other two participants. *Commonwealth* v. *Conroy*, 333 Mass. 751, 755, and cases cited.

The defendant next argues that it was error to admit against him evidence of what occurred in Miss Votta's car before there was any evidence showing him to have been a participant in a joint enterprise as to those acts. In our view the total evidence presented by the Commonwealth permitted an inference that the defendant was acting in concert with the persons in the car, if, indeed,

---

[2] In the *Bruton* case the court said, at p. 137: "Here the introduction of Evans' confession posed a substantial threat to . . . [Bruton's] right to confront the witnesses against him, and this is a hazard we cannot ignore. Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating . . . [Bruton], in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for . . . [Bruton's) constitutional right of cross-examination. The effect is the same as if there had been no instruction at all."

he was not one of such persons.[3]   What is involved at most in this situation is whether the defendant has the right to require that the Commonwealth start its presentation of evidence by showing the part which he took in the total criminal effort.   We conclude that he does not have that right.   "If two or more [persons] are acting in concert for the accomplishment of crime the acts of each are admissible against the others where there is evidence of a common purpose.   The testimony implicating each and all cannot be introduced in bulk, but must be put in by piecemeal." *Commonwealth* v. *Cline,* 213 Mass. 225, 226. *Commonwealth* v. *Chapman,* 345 Mass. 251, 255.   See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 57–58.   In the trial of cases much must be left to the discretion of the presiding judge as to the order in which the evidence is to be introduced.   There was no abuse of discretion here.

At the close of the Commonwealth's evidence the defendant filed a motion for a directed verdict and it was denied.   He then called two witnesses who testified that between 5:30 and 5:50 P.M. on the date of the alleged crime they received telephone calls from the defendant. The defendant then rested and renewed his motion which was again denied.   The exceptions to the denial of these motions do not require extended discussion.   We have summarized the evidence in some detail above.   It was clearly sufficient to permit the jury to find that the three men in Miss Votta's car confined her and otherwise acted toward her in the manner and with the intent alleged in the indictments against the defendant and Murphy.   The only question remaining is whether the evidence was sufficient to permit the jury to infer either (a) that the defendant was one of the men present in the car when Miss Votta was thus confined and threatened, or (b) that he was acting in concert with the men in the car to com-

[3] The defendant's argument that he was not in the car is based on the failure of Miss Votta to identify him as one of the persons there. Her inability to identify all of the occupants was due in part to physical restraints imposed on her by the occupants.   However, it does not follow, in view of the defendant's later possession of the paper with the safe combinations, that the jury could not infer that he was one of the three persons present in the car.

mit the crime charged in the indictment against him. We hold that the evidence was sufficient to permit either of these inferences, and that there was no error in the denial of the motions for a directed verdict.

The defendant excepted to the judge's charge to the jury in two respects. The first exception was to the judge's obviously inadvertent statement to the jury that the defendant was charged with the crime of attempting to commit larceny. There is no merit to this exception. The judge started his instructions to the jury by reading the indictment against the defendant. When counsel called his attention to his mistaken reference to the crime charged, he immediately correctly instructed the jury in a manner which could leave no doubt about the crime charged against the defendant.

The second exception relates to some examples used by the judge in his instructions on the subject of the criminal responsibility of a person acting in concert with others in the commission of a crime. The defendant concedes that the examples "were correct in the abstract and stated the law correctly *as to the facts of those particular examples,*" but he contends that they "were misleading . . . in that they gave the impression that in every criminal case involving a joint enterprise all the participants are liable for all the acts of the other participants even though they themselves play no role or have no knowledge of the act." We do not agree with this characterization of the examples used by the judge or with this interpretation of the instructions which he gave to the jury.

The sufficiency and correctness of instructions to a jury are to be determined by consideration of the charge as a whole, and not on the basis of fragments lifted from context and then subjected to scrutiny as though each fragment had to stand or fall on its own without the aid of the remainder of the charge. *Commonwealth* v. *Aronson,* 330 Mass. 453, 457. "The fairness of a charge cannot be determined by considering only a portion of it out of context. On appeal, the charge must be examined as a whole and portions of it will not be scrutinized apart

from their content as isolated verbal phenomena." *Charles A. Wright, Inc.* v. *F. D. Rich Co. Inc.* 354 F. 2d 710, 713–714 (1st Cir.), cert. den. 384 U. S. 960. *Harris* v. *United States,* 367 F. 2d 633, 636 (1st Cir.), cert. den. 386 U. S. 915. "It is the impression created by the charge as a whole that constitutes the test." *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15. Thus tested, the judge's charge to the jury in this case was legally sufficient, adequate and correct.

The only remaining alleged error argued by the defendant relates to testimony from a police officer about a police department practice followed in making entries in the police journal. We have considered this exception and find no error. It would add nothing to our jurisprudence to publish the details underlying this exception.

*Judgment affirmed.*