COMMONWEALTH vs. MICHELLE BARNES.

Hampshire.   November 4, 1975. — January 6, 1976.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Accessory.   Evidence,* Acceptance or rejection of testimony.   *Constitutional Law,* Equal protection of laws.   *Practice, Criminal,* Presumption of duress.   *Words,* "Wife."

At the trial of an indictment under G. L. c. 274, § 4, as appearing in St. 1943, c. 488, § 1, charging the defendant with being an accessory after the fact to a felony, where the evidence of defendant's relationship with the principal offender consisted entirely of defendant's conflicting out-of-court statements, the jury were entitled to believe her statement that she could not be married to the principal because he was already married to someone else, and to disbelieve her further statements concerning their marital status, and to conclude beyond a reasonable doubt that she was not the principal's wife and was not entitled to the defense of affinity. [465-466]

G. L. c. 274, § 4, in failing to include "an individual who cohabits with the principal in a marriage context" within the exceptions to those who may be charged with being an accessory after the fact to a felony, does not violate the equal protection guaranties of either the Massachusetts Constitution or the Constitution of the United States.   [466-467]

Self-serving out-of-court statements by a woman as to duress imposed upon her by a man did not entitle her to directed verdicts upon indictments for being an accessory after the fact to murder and for a breaking and entering immediately following.   [467-468]

This court abandons the presumption that any crime committed by a wife in her husband's presence was done under his coercion, and henceforth will apply the same rules of proof as to coercion by anyone else.   [468]

INDICTMENTS found and returned in the Superior Court on June 8, 1970, and March 16, 1973.

The cases were tried before *Moriarty*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Margaret D. McGaughey* for the defendant.

*Stephen R. Kaplan*, Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was convicted of breaking and entering a building with intent to commit a felony and of being an accessory after the fact to murder. She appeals under G. L. c. 278, §§ 33A-33G, and argues that verdicts of not guilty should have been directed on both charges. We hold: (1) The evidence presented a jury issue whether the defendant was the wife of the principal murderer, entitled to a defense of affinity under G. L. c. 274, § 4,[1] as appearing in St. 1943, c. 488, § 1. (2) Denial of the defense to her if she was not the principal's wife did not deny her equal protection of the laws. (3) The evidence presented a jury issue as to duress. We affirm the convictions. We also take the occasion to announce that as to crimes committed hereafter we abandon any presumption that a wife who acts in her husband's presence acts under his coercion.

---

[1] "Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact, and, except as otherwise provided, be punished by imprisonment in the state prison for not more than seven years or in jail for not more than two and one half years or by a fine of not more than one thousand dollars. The fact that the defendant is the husband or wife, or by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender, shall be a defence to a prosecution under this section. If such a defendant testifies solely as to the existence of such relationship, he shall not be subject to cross examination on any other subject matter, nor shall his criminal record, if any, except for perjury or subornation of perjury, be admissible to impeach his credibility."

There was ample evidence that the principal, his victim and the defendant planned to burglarize the home of the Irwins. Mrs. Irwin was a cousin of the murder victim. On April 14, 1970, driving to the burglary in a car, the principal and the victim had an argument and the principal shot and killed the victim. The defendant removed the victim's clothes. The principal and the defendant then carried out the burglary, and the defendant cashed for the principal a check stolen in the burglary. A couple of days later they dumped some of the stolen property in the woods and threw pieces of the murder weapon into a lake.

The evidence of the defendant's marital status and of coercion by her husband consisted entirely of her out-of-court statements, which were conflicting and confused. They included statements that she had lived with the principal for eight years and borne him three children, that she had married him in Arkansas in 1965, that she had married him in Virginia in 1965, that she had lived with him as common law husband and wife in Rhode Island, that she could not be married to him because he was already married, and that they spent their lives trying to stay one step ahead of the police, used numerous aliases, and always kept extra identification with them in case they had to change identification quickly. She had also said that the only reason she did the things she did was her fear of him.

As to the accessory crime, the judge charged the jury that the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant was not married to the principal, that Massachusetts would recognize a common law marriage entered into in Rhode Island, but that no such marriage could take place unless the parties were free of legal disability. Notwithstanding a disability, a party who entered the relationship in good faith would be considered to be married if the impediment of prior marriage were removed and the parties continued to live together. The judge further

charged that the defendant could not be found guilty if she acted out of fear of death or serious bodily harm at the hands of the principal.

1. *"Wife."* Under G. L. c. 274, § 4, once there was evidence in the case that the defendant was the principal's wife, she could not be convicted as an accessory after the fact unless the Commonwealth proved beyond a reasonable doubt that she was not the "wife . . . of the offender." *Commonwealth* v. *Valleca,* 358 Mass. 242, 245 (1970), and cases cited. See *Commonwealth* v. *David,* 365 Mass. 47, 54 (1974). Whether she became his common law wife under the law of Rhode Island presented a question of fact on which the evidence was sufficient for submission of the issue to the jury. Cf. *Panneton* v. *Panneton,* 323 Mass. 477, 480 (1948); *Sardonis* v. *Sardonis,* 106 R.I. 469, 472 (1970). Wisely, the judge did not complicate their task by instructing them that Rhode Island law requires "clear and convincing evidence" of a common law marriage. See *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 874 (1975) (opinion of Quirico, J., concurring in part and dissenting in part). Similarly, if the jury found that a former marriage was an impediment to the marriage claimed, there were jury questions whether the defendant entered into a subsequent marriage in good faith, whether the impediment was removed, and whether the defendant and the principal continued to live together as husband and wife in good faith on the part of one of them. G. L. c. 207, § 6. See *Turner* v. *Williams,* 202 Mass. 500, 506 (1909). The jury were free to disbelieve all or part of the self-serving out-of-court statements of the defendant. *Commonwealth* v. *Holiday,* 349 Mass. 126, 129 (1965). Thus they could reject all her statements as to marital status except the statement that the principal was already married, and on that basis could conclude beyond a reasonable doubt that she was not his wife. There was no error in the denial of a directed

verdict on that issue, and no question is presented as to the adequacy of the instructions to the jury.

2. *Equal protection.* The defendant argues that if G. L. c. 274, § 4, does not provide a defense "to an individual who cohabits with the principal in a marriage context," it violates the equal protection guaranties of arts. 1 and 10 of the Declaration of Rights of the Massachusetts Constitution and of the Fourteenth Amendment to the Constitution of the United States. We do not think this contention is open to the defendant in the absence of an exception to the judge's charge on the issue. The jury were not required to find that the defendant cohabited with the principal at all, much less that she cohabited with him "in a marriage context."

In any event, we think the point is without substance. The defendant cites *Eisenstadt v. Baird,* 405 U.S. 438 (1972), a decision striking down governmental intrusion into the private decision whether to bear or beget a child. *Id.* at 453. She also relies on cases protecting illegitimate children from discrimination. *Gomez v. Perez,* 409 U.S. 535 (1973). *Weber* v. *Aetna Cas. & Sur. Co.,* 406 U.S. 164 (1972). *Levy* v. *Louisiana,* 391 U.S. 68 (1968). But cf. *Labine* v. *Vincent,* 401 U.S. 532 (1971). Those cases seem quite remote from the present one. Nor is there here any distinction based solely on sex, as in *Commonwealth* v. *MacKenzie,* 368 Mass. 613, 615-616 (1975).

The Commonwealth acknowledges "difficulty in evaluating the constitutional claim" because "the purpose of the immunity provision is somewhat obscure." That difficulty arises from a view of the statute as a "license to destroy evidence." The Legislature, however, contemplates an accusation that the defendant, with appropriate knowledge and intent, "did harbor, (conceal, maintain,) or assist" the offender. G. L. c. 277, § 79, "accessory after the fact." "In view of the moral timbre of our time, however, even if it be viewed as weakness, it is asking too much of a jury to expect a conviction of one

who has merely opened his door or given some similar aid to a parent, child or other intimate relation." R. Perkins, Criminal Law 683 (2d ed. 1969). In this spirit, we think it was open to the Legislature to define the limits of the "other intimate relation." Definition in terms of "consanguinity, affinity or adoption" is quite broad, and exclusion of close friends, employees, business partners and paramours is not irrational.

3. *Presumption of duress.* The defendant, apparently assuming that the judge and jury were required to believe her self-serving out-of-court statements, argues that a verdict for the defendant should have been directed on both indictments on the ground of duress. For the reasons already given, the jury were not bound to accept her statements either as to duress or as to her marital status. There was therefore no error in the denial of her motion for directed verdicts.

We think, however, that we should clarify the governing principles. It was recognized long ago that "force or the compulsion of others" might provide a defense to a charge of crime. See *Commonwealth* v. *Elwell*, 2 Met. 190, 192 (1840); R. Perkins, *supra* at 951-953; Annot., 40 A.L.R.2d 908 (1955). A separate principle, traceable to the fact that "benefit of clergy" was not generally available to women in medieval England, gave a married woman a defense for acts under the coercion of her husband, and a disputable presumption that her acts in the presence of her husband were done under his coercion. See *Martin* v. *Commonwealth*, 1 Mass. 347, 391 (1805); *Commonwealth* v. *Lewis*, 1 Met. 151, 153 (1840); *Commonwealth* v. *Helfman*, 258 Mass. 410, 416 (1927), and cases cited; R. Perkins, *supra* at 909-918. We need not now decide whether *Mullaney* v. *Wilbur*, 421 U.S. 684, 701-702 (1975), now requires that the prosecution negate duress or coercion, marital or otherwise, beyond a reasonable doubt. Cf. *id.* at 705-706 (concurring opinion of Rehnquist, J., on defense of insanity).

Nearly fifty years ago, in the *Helfman* case, *supra,* we said of the presumption of coercion by the husband, "Doubtless it has lost something of its force by reason of the wider liberty of married women established by legislative enactments and by the usages of society, and hence may be more easily overcome by evidence. But no law has abolished the presumption and it still exists for what it is worth in the light of the facts of each case." Courts in many jurisdictions have either abolished the presumption outright or have held it to be easily overcome, and "the trend against it is so obvious and so persistent as to forecast its eventual disappearance." R. Perkins, *supra* at 915, and cases cited. We recognize that a rule favorable to criminal defendants, no matter how irrational, cannot be overruled with retroactive effect and ordinarily should be changed only by legislative action. Nonetheless, we think the time has come to set in motion the process of laying this ghost to rest. As to crimes committed by married women hereafter, we shall apply the same rules of proof as to duress or coercion by a husband as we would to duress or coercion by anyone else.

*Judgments affirmed.*