COMMONWEALTH *vs.* THOMAS F. MCINERNEY.

Norfolk.    January 6, 1977. — July 28, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & LIACOS, JJ.

*Homicide. Malice. Evidence,* Acceptance or rejection of testimony, Admissions and confessions, Presumptions and burden of proof. *Practice, Criminal,* Charge to jury. *Insanity. Words,* "Deliberately premeditated malice aforethought."

At a murder trial evidence that the defendant intentionally put a cord around the victim's neck and applied force until he saw blood come out of her nose and mouth, without any lawful excuse or justification for his acts, was sufficient to permit the jury to find the malice required for murder in the first or second degree, even though the

Commonwealth's only proof of the homicide consisted of the defendant's admissions which were coupled with denials by him of any intention to hurt or kill the victim. [140-148]

There was no error in a judge's instructions to the jury at a murder trial on the subjects of malice and the burden of proof even though the judge referred on occasion to the "presumption" of malice. [148-151]

At a murder trial, evidence that the defendant had sought medical treatment for impotence, that he told a friend, "I don't fit in this world and they're going to lock me up," and that he had taken some pills was not sufficient to require instructions to the jury on the defense of insanity. [151-153]

Where evidence at a murder trial was insufficient to support an inference or finding of deliberate premeditation on the part of the defendant, the judge erred in denying the defendant's motion for a directed verdict of acquittal on so much of the indictment as charged murder in the first degree. [153-154] HENNESSEY, C.J., dissented in part.

INDICTMENT found and returned in the Superior Court on October 4, 1974.

The case was tried before *McNaught, J.*

*Stephen L. Saltonstall* for the defendant.

*David L. Trainor,* Special Assistant District Attorney, for the Commonwealth.

QUIRICO, J. The defendant was indicted for the crime of murder in the first degree of Cynthia M. Hartford (victim). The case was submitted to the jury with instructions by the trial judge that they could return one of four alternate verdicts: not guilty, guilty of murder in the first degree, guilty of murder in the second degree, or guilty of manslaughter. The jury returned a verdict of guilty of murder in the first degree, whereupon the defendant was sentenced to imprisonment for life, the sentence to be served from and after a life sentence which he was then serving.[1] The case is now before us on the defendant's appeal under G. L. c. 278, §§ 33A-33G.

The appeal raises four issues with respect to which the

---

[1] At the time the defendant allegedly committed the crime involved in the present case, he was at liberty on parole from a prior life sentence imposed on his conviction for an earlier murder. He did not testify at the trial of the present case, and there was no evidence before the jury about his prior conviction, sentence, or parole.

Commonwealth *v.* McInerney.

defendant alleges that the judge committed error. They are: (a) whether there was sufficient evidence of malice to permit the case to be submitted to the jury on the charge of murder in either degree, (b) whether the judge correctly instructed the jury that they might infer malice from the use of a deadly weapon "unless by the circumstances the jury considers that it has been disproved," (c) whether the judge correctly declined to instruct the jury on the defense of insanity and that they might return a verdict of not guilty by reason of insanity, and (d) whether there was sufficient evidence of premeditated malice to permit the case to be submitted to the jury on the charge of murder in the first degree.

We conclude that there was error in the judge's denial of the defendant's motion for a directed verdict of acquittal on so much of the indictment as charges murder in the first degree and that he is entitled to a reduction of the verdict to one of guilty of murder in the second degree, that there was no error by the judge in any other respect, and that the defendant is entitled to no relief under G. L. c. 278, § 33E.

There was an abundance of evidence implicating the defendant in the killing of the victim. Most of it was in the form of admissions made by the defendant to a number of his friends and acquaintances in the first two days following the killing and repeated by them in their testimony as witnesses at the defendant's trial.[2] The following is a brief summary of the evidence.

The defendant and the victim met at a lounge in Boston about 6:30 P.M. on August 14, 1974, and they were there together until they left about 1 A.M. on August 15, 1974. During that period the defendant drank about six

---

[2] After the closing arguments to the jury, the defendant made an unsworn statement to the jury in which he, in effect, admitted committing the killing, but denied any intention of hurting the victim. This statement was not evidence. See *Commonwealth* v. *Stewart,* 255 Mass. 9, 14-19 (1926); *Commonwealth* v. *O'Brien,* 360 Mass. 42, 48-50 (1971) (no error in refusal to permit a defendant to make an unsworn statement); *Commonwealth* v. *Clark,* 363 Mass. 467, 472 (1973).

servings of beer and the victim about six "wine coolers." When they left the lounge the victim drove the defendant in her car to a point in Brookline where the defendant had left his car, and from that point they agreed to go in their separate cars to her apartment in Quincy. After arriving there they had a few drinks of beer and then attempted to have sexual intercourse but were unable to do so because of the defendant's long-standing problem of impotency and his inability to copulate.

The victim laughed at the defendant and told him she had wasted her evening. He asked her to stop laughing at him and she continued, so he put his hand over her mouth to stop her. She still continued to laugh and he slapped or struck her. She started to yell and tried to leave. He then grabbed a piece of cord or twine from a table, wrapped it around her neck, and applied pressure. He saw blood coming from her nose and mouth and thought he had killed her. He put her body on a couch and then left the apartment.

In leaving the apartment the defendant wiped the door-knob to eliminate fingerprints and took with him the empty beer cans and the victim's pocketbook. He disposed of the victim's automobile driving license and the keys to her apartment and automobile by throwing them away in some tall grass and shrubbery at the rear of the apartment complex where he lived. The police found the items there on August 19, 1974.

A medical expert attributed the death of the victim to "asphyxia due to strangulation by ligature," and he expressed the opinion that her death had occurred sometime between 1 A.M. and 1 P.M. on August 15, 1974.

In the late afternoon or early evening of August 17, 1974, the defendant, accompanied by four of his friends, was driven to the home of an officer of the Quincy police department and turned himself in and was placed under arrest.

Additional evidence will be summarized, as necessary, in the discussion of the several errors alleged by the defendant.

1. *Malice.* On the subject of malice the defendant argues, in the alternative, first, that there was no evidence from which the jury could find that the killing of the victim was with "malice aforethought" (G. L. c. 265, § 1), and therefore it could not be murder in either degree, and, second, that if there was any evidence indicating such malice, the verdict was against the weight of the evidence. We disagree.

We dispose of the second part of the defendant's argument by saying that, if there was any evidence from which the jury could infer malice, it was not error for the judge to refuse to limit the jury verdicts to either one of not guilty or one of guilty of manslaughter. However, in such a situation it would be appropriate for us to consider that matter in the review of the entire case, both as to fact and law, under the mandate of G . L. c. 278, § 33E.

At the outset of our consideration of the first part of the defendant's argument, we take note of what is meant by the words "malice" and "malice aforethought" as part of the definition of murder. It is appropriate that we do so because of the defendant's emphasis on evidence which he contends indicates the absence of any ill will or hostility on his part toward the victim and also the absence of any intention to kill or harm the victim.

"The argument of the defendant that there was no evidence of malice or 'ill will' on the part of the defendant toward the victim, and that this therefore precluded a verdict of guilty of murder in the second degree, betrays a basic misunderstanding of the meaning of 'malice aforethought' employed with respect to the crime of murder in this Commonwealth. Malice aforethought does not necessarily require a showing of ill will toward the victim. Rather it comprehends any intent to inflict injury without legal justification or palliation." *Commonwealth* v. *Festa,* 369 Mass. 419, 424 (1976). "If there was an intention on the part of the defendant to inflict injury upon the deceased which was not justified on any lawful ground or palliated by the existence of any mitigating circumstances, that intention was malicious within the meaning of the

law." *Commonwealth* v. *Mangum*, 357 Mass. 76, 85 (1970). "[I]t is possible to commit murder without any actual intent to kill or to do grievous bodily harm, and ... reduced to its lowest terms, malice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). In *Commonwealth* v. *Campbell*, 352 Mass. 387, 398-399 (1967), we quoted the above language from the *Chance* decision, and then said: "This simply means in such circumstances that a jury could imply malice and render a verdict of second degree murder which would be upheld on appeal." *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969). *Commonwealth* v. *Gricus*, 317 Mass. 403, 410-411 (1944). *Commonwealth* v. *Bedrosian*, 247 Mass. 573, 576 (1924). *Commonwealth* v. *Pemberton*, 118 Mass. 36, 39, 43 (1875). *Commonwealth* v. *Webster*, 5 Cush. 295, 304 (1850). *Commonwealth* v. *York*, 9 Met. 93, 103-107 (1845).[3]

The defendant's contention that there was no evidence from which the jury could find malice is based on the fact that the Commonwealth's only proof of the homicide consisted of the defendant's admissions which were coupled with denials by him of any intention to hurt or kill the victim. He contends that the Commonwealth thus failed to prove malice, and that it has instead actually proved

---

[3] The opinion of Chief Justice Shaw in the *York* case includes a helpful discussion of the meaning of the word "malice" when used in the legal sense. 9 Met. 104-107. In that opinion the court also held that proof of a wrongful act by a defendant, done intentionally and without just cause or excuse, resulting in the death of another, naturally and necessarily gave rise to a presumption of malice, and that it was then the burden of the defendant to prove the absence of malice. Justice Wilde dissented on the placing of the burden on the defendant to disprove malice. On that same issue, the opinion of the court has been the subject of criticism and questioning in a number of more recent decisions. *Mullaney* v. *Wilbur*, 421 U.S. 684, 704 (1975). *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 687 n.4 (1976). *Gagne* v. *Meacham*, 423 F. Supp. 1177, 1180-1181 (D. Mass. 1976).

the absence of malice. The defendant argues in effect (a) that the jury may not accept the defendant's admissions as true and at the same time reject his accompanying exculpatory statements as untrue, and (b) that, in the alternative, if the jury were permitted to disbelieve, and did disbelieve the defendant's exculpatory statements, the net result would be the proof of a homicide but no proof of malice, and therefore no proof of murder in either degree.

The defendant does not question the general rule that "[t]he credibility of witnesses is ordinarily entirely for the fact finding tribunal ... [and that c]ommonly how much or how little of the testimony of a witness is to be believed is for the jury." *Commonwealth* v. *Davis*, 284 Mass. 41, 51 (1933), and cases cited. In the application of that rule to civil cases this court has held that the jury "would have ... the right to accept ... [a party's] admissions, and to reject that part of her testimony which was favorable to herself." *Jefferds* v. *Alvard*, 151 Mass. 94, 95 (1890). *Limoges* v. *Limoges*, 287 Mass. 260, 261 (1934).

The same rule has been applied in criminal cases. In *Commonwealth* v. *Holiday*, 349 Mass. 126, 129 (1965), where the defendant contended that the jury had to accept his testimony on a point "in its entirety or not at all," we said: "The Commonwealth need not accept the dilemma posed by the defendant. It is entitled, as is the defendant, to the verdict of the jury based upon all the evidence in the case. ... It is elementary that the acceptance or rejection of oral testimony, in whole or in part, is within the exclusive province of the jury. ... [T]he jury were not obliged to consider the evidence with the restriction argued by the defendant." The *Holiday* opinion was cited with approval in *Commonwealth* v. *Barnes*, 369 Mass. 462, 465 (1976), where we said: "The jury were free to disbelieve all or part of the self-serving out-of-court statements of the defendant."

In at least two homicide cases we have rejected arguments by defendants that, because the Commonwealth had offered in evidence statements by the defendant as

to how the homicide had occurred, it was somehow bound by that evidence and the jury were compelled to believe it.

In *Commonwealth* v. *Noxon*, 319 Mass. 495 (1946), the defendant requested an instruction that "[t]he Commonwealth having introduced as part of its case statements of the defendant as to happenings, observations and state of mind, and there being no evidence contradicting them, the Commonwealth is bound by those statements, observations and testimony." In upholding the trial judge's denial of that request we said, at 547-548: "It was for the jury to determine the weight to be given to the statements of the defendant. They were not obliged to accept or reject his statements in their entirety, but could give credence to only such portion as they deemed trustworthy," citing *Commonwealth* v. *Goldenberg*, 315 Mass. 26, 30 (1943).

In *Commonwealth* v. *Goldenberg*, 315 Mass. 26 (1943), the defendant was convicted of murder in the second degree of his girl friend. The victim died from numerous stab wounds inflicted on her while she was seated with the defendant in his car. The defendant maintained that a robber committed the murder after knocking him unconscious. In that case, as in the present one, the defendant argued that it was error to refuse to direct a verdict of not guilty of murder. This court said, at 30: "If the jury adopted the substance of these statements [by the defendant], they would be bound to come to the conclusion that the murder was committed by a robber. On the other hand, if all these statements were entirely discredited by the jury and if they were wholly eliminated from the case, there would be little left to support this conviction. The jury, however, were not required to accept or reject these statements in their entirety, but they could give credence to such portions as they found trustworthy."

"[I]n this Commonwealth there is now no rule that a witness must be believed simply because he is not impeached and tells a plausible story. The jury decide that question uncontrolled." *Commonwealth* v. *McNeese*, 156 Mass. 231, 232 (1892). *Perry* v. *Hanover*, 314 Mass. 167,

170 (1943) ("[E]ven testimony that is 'undisputed' or 'uncontradicted' need not necessarily be believed"). *Lydon* v. *Boston Elevated Ry.,* 309 Mass. 205, 206 (1941). *Sullivan* v. *Old Colony St. Ry.,* 200 Mass. 303, 309 (1908). *Lindenbaum* v. *New York N.H. & H.R.R.,* 197 Mass. 314 323 (1908). See *Jones* v. *Commonwealth,* 331 Mass. 169, 171-172 (1954).

"Without doubt occasions arise where the interpretation to be given to particular testimony is matter of law, and where a jury cannot properly be permitted to wrest part from a clear and consistent context so as to attribute to a witness a statement which he did not make." *Lowell* v. *Boston Storage Warehouse Co.,* 280 Mass. 234, 237 (1932). Cf. *Marquandt* v. *Boston Young Women's Christian Ass'n,* 282 Mass. 28, 31-32 (1933). This is not such a case. Rather it is a case where the jury could believe a part and disbelieve a part of the defendant's statements without distorting or mutilating any integral portion of the statements. *Woods* v. *DeMont,* 322 Mass. 233, 235 (1948). *Hill* v. *West End St. Ry.,* 158 Mass. 458, 460 (1893).

There was sufficient evidence in this case to permit the jury to find that the defendant intentionally put a cord around the neck of the victim and applied force until he saw blood come out of her nose and mouth, that according to common experience there is a plain and strong likelihood that death will follow such acts, and that there was no lawful excuse or justification for his acts. From those acts the jury could properly infer malice within the meaning of that word when used with reference to murder. We assume, without deciding, that the defendant's various statements in which he admitted the homicide included additional language which, if believed, would have permitted the jury to conclude that the killing was without malice and therefore not murder. See *Bedder* v. *Director of Pub. Prosecutions,* [1954] 1 W.L.R. 1119 (H.L.). Yet the jury were not required to believe that additional language, and if they chose to disbelieve it the remaining evidence was still sufficient to permit them to infer that

the defendant had committed the homicide with malice.

The defendant's argument on the present point rests almost entirely on the decision of the Appeals Court in *Commonwealth* v. *Johnson,* 3 Mass. App. Ct. 226 (1975), where, in circumstances somewhat similar to those in the present case, it was held error to deny a motion for a directed verdict of acquittal of so much of the indictment as charged murder. We decline to adopt or follow the reasoning in that case. The *Johnson* case and the present case may be distinguishable because of the significant difference in the state of the evidence before the jury in each case when the Commonwealth rested and the motion for a directed verdict of not guilty of murder was filed and denied. In the *Johnson* case a police officer testified regarding the defendant's statement that the victim had instigated a fight and attacked the defendant with a knife, whereupon the defendant obtained a knife from some undisclosed source and stabbed the victim. In the present case the statement by the defendant admitting the killing of the victim included no claim of self-defense or other justification. However, our decision not to follow the reasoning of the *Johnson* case is not based on that difference in evidence.

We disagree for the more basic reason that by the *Johnson* opinion the Appeals Court has sought to introduce to the law of this Commonwealth an exception to the long-settled principles that a jury are permitted to infer malice from the proof of an intentional homicide, and that if there is evidence which, if believed, would negate such an inference, the jury have the sole power to believe or disbelieve any or all such evidence.

The Appeals Court correctly stated the general rule that "[t]he characteristic distinction between murder and manslaughter is malice ... [and that w]here testimony is adduced which shows ... circumstances [of palliation or mitigation], the jury may believe the testimony, and return a verdict of manslaughter, or disbelieve the testimony, and return a verdict of murder based on the inference of malice drawn from the intentional homicide."

*Commonwealth* v. *Johnson*, 3 Mass. App. Ct. 226, 232 (1975). The Appeals Court then stated that as a matter of first impression in this Commonwealth it recognized and applied an exception "where the only evidence which proves the intentional homicide itself shows it to have been without malice." *Id.*

The principal reason given by the Appeals Court for the exception seems to be contained in the following language: "The circumstances of mitigation or palliation were an integral part of the defendant's admission. There was ... no basis (such as inconsistency or implausibility) upon which the jury might justifiably have accepted the portion of the [defendant's] transcribed statement which admitted the stabbing but rejected the portion which described the factual context in which it occurred. The Commonwealth was not bound by the evidence of palliating circumstances it introduced; but as it introduced nothing to contradict that evidence, and nothing other than that evidence to show that the defendant intentionally killed ... [the victim], it has not proven the existence of malice, but has only proven the absence of malice." *Id.* at 233.

Evidence of an intentional killing by the defendant, absent any evidence of justification, is sufficient to permit the jury to infer that it was a killing with malice — i.e., murder in the second degree. Is the evidence any less sufficient for that purpose if there is added thereto a statement or statements made by the defendant claiming justification or mitigation, which statements the jury may believe or disbelieve in whole or in part as they see fit? Can a defendant's addition of self-serving exculpatory statements by way of justification or mitigation, after admitting an intentional homicide, reduce the crime inferable from his admission from murder in the second degree to manslaughter? Does a hopper full of evidence that a defendant committed an intentional homicide without justification contain less evidence to permit a finding of malice and therefore murder than does a hopper which in addition thereto contains self-serving exculpatory statements by the defendant which the jury may disbelieve in their en-

tirety? We believe that the answer to all these questions must be in the negative.

In *Commonwealth* v. *Gagne,* 367 Mass. 519, 522 (1975),[4] we said: "It has long been recognized in this Commonwealth that malice may be inferred from the intentional use of a deadly weapon. . . . The existence of malice may be rebutted . . . by showing . . . [justification or mitigation]. It does not necessarily follow, however, that where there is *any* evidence of mitigating circumstances, the inference of malice is rebutted. Such a holding would, in effect, require the Commonwealth to prove actual malice in any case where there is any evidence of mitigating or justifying circumstances. This has never been the law of the Commonwealth. . . ." See *Commonwealth* v. *Greene,* 372 Mass. 517, 520 (1977). *Commonwealth* v. *Johnson,* 372 Mass. 185, 192 (1977).

The effect of recognizing the "exception" in the *Johnson* case would be to give conclusive effect to the defendant's self-serving attempt at justification or palliation of his crime, and would give it primacy over the inference of malice which the jury are permitted to draw from the crime itself in preference to the defendant's statements. Applying such a rule would be an incursion on the exclusive prerogative of the jury to decide the facts of the case. That the evidence consists of a statement made by the defendant would not alter the result.[5] In short, we decline

---

[4] See *Gagne* v. *Meacham,* 423 F. Supp. 1177 (D. Mass. 1976). A petition for writ of error in this case was filed before a single justice of this court on February 18, 1977, and is now pending before the single justice. *Gagne* v. *Commonwealth,* Civil No. 77-66 (Sup. Jud. Ct. for Suffolk County).

[5] We do not consider it necessary to review in detail the four cases cited by the Appeals Court to the effect that, "where the only evidence which proves the intentional homicide itself shows it to have been without malice," there cannot be a conviction for murder. Those cases appear to rely on the disappearing, or "bursting bubble" theory of presumptions, whereby the presumption disappears in the face of *any* evidence which rebuts malice. See 9 J. Wigmore, Evidence § 2491 (3d ed. 1940); McCormick, Evidence § 345 (2d ed. 1972). Other cases cited by the Appeals Court appear to involve a review of evidence in addition to the defendant's admissions and exculpatory statements.

to adopt any rule that the inference of malice which a jury are permitted to draw from a homicide committed intentionally is conclusively rebutted as matter of law by the mere introduction of evidence which, if believed, would permit a finding of justification or palliation for the killing.

2. *Instructions to jury on malice.* The pertinent portion of the judge's charge to the jury on the subject of malice included the following statements which the defendant has singled out for criticism: "Where an unlawful killing is intentional or purposeful, there may be circumstances which will rebut the presumption of malice and reduce the character of that unlawful killing from murder to manslaughter.... When a killing is caused by the intentional use of a deadly weapon, malice may be inferred, unless by the circumstances the jury considers that it has been disproved.... An intentional killing does carry with it the presumption of malice aforethought but the circumstances which precede and accompany the intentional killing may be such as to rebut the presumption of malice and reduce the crime, therefore, to manslaughter." The defendant contends that this instruction is erroneous on two grounds which we now consider.

One ground is that since the very evidence which the Commonwealth used to prove that the defendant committed the homicide, viz., the defendant's admissions, also showed circumstances of mitigation or justification, there can be no inference of malice. This is a repetition of the same argument, based on the case of *Commonwealth* v. *Johnson*, 3 Mass. App. Ct. 226 (1975), which we rejected in part 1 of this opinion, and we need not discuss it further.

The other ground is that the judge's instructions permitted the jury to infer malice and then allegedly shifted to the defendant the burden of disproving it, in violation of the holdings in *In re Winship*, 397 U.S. 358 (1970), and *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). See *Patterson* v. *New York*, 432 U.S. 197 (1977); *Hankerson* v. *North Carolina*, 432 U.S. 233 (1977). This contention is not supported by a careful reading of the judge's entire instructions to the jury, and particularly the instructions on

the subjects of malice and the burden of proof. "A jury charge must be considered as a whole, not by bits and pieces" (*Commonwealth* v. *Gibson,* 368 Mass. 518, 527-528 [1975]), nor by "fragments lifted from context and then subjected to scrutiny as though each fragment had to stand or fall on its own without the aid of the remainder of the charge." *Commonwealth* v. *Whooley,* 362 Mass. 313, 319 (1972). *Commonwealth* v. *Aronson,* 330 Mass. 453, 457 (1953).

In arguing this point in his brief the defendant makes repeated references to the "presumption" of malice, often enclosing the words in quotation marks. The judge also used those words at several points in his instructions to the jury, while at others he referred to the "inference" of malice.

The use of the words "presumption" and "inference" interchangeably as though they were legally synonymous often gives rise to problems which might be avoided by the more precise use of either one or the other of the two words as appropriate in particular circumstances. Countless pages in scholarly legal treatises and in judicial opinions have been devoted to attempts to explicate the true meaning, effect, consequences, and ramifications of a presumption, whether it is "conclusive" or rebuttable, whether it is evidence or merely a rule in reference to evidence, when and in what circumstances it appears or disappears, whether it operates to shift the burden of proof or merely the burden of going forward with evidence, and other intriguing niceties which all too often serve only to obfuscate rather than light the way for lawyers and judges professedly dedicated to the search for truth. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 702-703 n.31 (1975); *Barnes* v. *United States,* 412 U.S. 837, 841-846 (1973); *Commonwealth* v. *Pauley,* 368 Mass. 286, 290-299, appeal dismissed, 423 U.S. 887 (1975); *Brown* v. *Henderson,* 285 Mass. 192, 194-197 (1934).

We need not dwell further on the problems inherent in presumptions because we believe that the process by which a jury are permitted to find malice in a case such as the

present one is not by virtue of any presumption of law but rather by the exercise of the jury's right and power to draw any reasonable, though not necessary, inference from all the circumstances of the homicide committed by the defendant. In the circumstances of this case the inference of malice was one which the jury were neither precluded from drawing nor compelled to draw, but was one which the jury were warranted in drawing if they saw fit to do so.

The defendant's argument that by permitting the jury to draw an inference of malice the judge shifted the burden of disproving malice to the defendant is similar to the argument which we rejected in *Commonwealth* v. *Gagne*, 367 Mass. 519, 524 (1975). We said there: "The defendant argues that the judge, in doing so [charging the jury on the inference of malice from the use of a deadly weapon], effectively took the case out of the category of manslaughter. After careful review of the charge as a whole ... we cannot agree with the defendant's contention. The jury were carefully and properly instructed on both manslaughter and the inference of malice. There was no error."

In the present case the jury were carefully and properly instructed on both manslaughter and the inference of malice. See *Commonwealth* v. *Johnson*, 372 Mass. 185, 192 (1977). The fact that on several occasions the judge lapsed into the use of the word "presumption" when he obviously meant "inference" did not detract from the otherwise thorough, accurate, and precise instructions on the subject. Additionally, the judge gave equally thorough, accurate, and precise instructions on the Commonwealth's burden of proof on all the essential elements of the crime charged, including but not limited to the element of malice.

He then stressed, at several points in his instructions, in the clearest of language, that the Commonwealth had the burden of proving beyond a reasonable doubt every essential of a crime before the jury could find the defendant guilty thereof, and that the defendant had no burden to take the stand, to present any evidence, or

to prove or disprove anything. While the instructions included references to the fact that malice, if inferred, might be disproved by other evidence, and that the decision thereon had to be made by the jury on the basis of the entire evidence, there was nothing in the instructions, whether expressed or implied, which in any way relieved the Commonwealth of the burden of proof on malice or which shifted to or imposed on the defendant any burden to disprove malice.

No fair reading of those instructions can support such a claim. There was thus no violation of the holdings of either the *Winship* or the *Mullaney* cases, both *supra.*

3. *The judge's refusal to charge on insanity.* The defendant seasonably filed requests that the judge charge the jury on the defense of insanity in accordance with the decision of this court in *Commonwealth* v. *McHoul,* 352 Mass. 544 (1967), that he instruct the jury that they might return a verdict of not guilty by reason of insanity, and that he instruct them of the consequences of such a verdict in accordance with our decision in *Commonwealth* v. *Mutina,* 366 Mass. 810 (1975). The judge declined to give the instructions requested or to instruct the jury at all on the defense of insanity. We hold that his ruling was correct.

Although the subject of insanity as a defense in criminal cases has received much attention from this court in recent years, particularly in the *McHoul* and *Mutina* cases, both *supra,* and in *Commonwealth* v. *Kostka,* 370 Mass. 516 (1976), and *Commonwealth* v. *Walker,* 370 Mass. 548 (1976), the question whether the evidence in any particular case was sufficient to require the judge to instruct on the subject does not appear to have been at issue in any case decided by this court. The *Kostka* decision included a lengthy discussion of the nature and effect of the "presumption" or "inference" of sanity in circumstances where the prosecution relied thereon and offered no psychiatric testimony and the defendant did offer such testimony. In that decision we said, at 532: "Insanity is a defense to the crime charged. Although once the issue

has been raised it is necessary for the prosecution to prove sanity beyond a reasonable doubt, *it is not necessary for the prosecution to prove sanity — nor would instructions on the presumption of sanity be appropriate — before the issue is raised"* (emphasis supplied).

The question here is whether there was anything in the Commonwealth's evidence, the defendant having presented no evidence, which was sufficient to raise the issue of insanity and which would have compelled the judge to instruct the jury on that subject.

We review the only evidence on which the defendant contends that the issue of insanity was raised. At some indefinite time prior to the homicide in question the defendant had sought medical assistance for his impotency problem without success. On the second day after the homicide, the defendant told a friend: "I don't fit in this world and they're going to lock me up." That was the same day he surrendered to the police. Later on that same day the defendant "had taken the pills" but there was no evidence what the pills were or what consequences followed from the taking of them. The defendant refers to this last matter as an "attempted suicide" but it is questionable whether the record supports that. In our opinion no one of these incidents or facts alone, nor the three together, is sufficient to have required the judge to instruct the jury on the defense of insanity. Indeed, in one case we said: "An attempt to commit suicide, like an attempt to escape from jail or a flight after the commission of a crime, may indicate the efforts of a guilty person to avoid punishment for his crime." *Commonwealth* v. *Goldenberg*, 315 Mass. 26, 33 (1943).[6]

We hold that in the circumstances of this case the judge properly refused to submit the issue of the defendant's insanity, i.e., criminal responsibility, to the jury, and that

---

[6] The defendant states in his brief that he had stated that he "needed help," referring to transcript at 7-30 as the basis for that claim. On that page of the transcript there is testimony that a witness told the defendant "that somebody would find out [about the homicide] and that he couldn't run away and that he needed help."

he properly refused to instruct the jury in accordance with the defendant's requests on that subject.

4. *Deliberately premeditated malice.* At the close of the evidence, the defendant filed a motion that the judge direct the jury to return a verdict of acquittal of so much of the indictment as charged murder in the first degree. The judge denied the motion and he instructed the jury that if they found that the defendant had committed murder "with deliberately premeditated malice aforethought" (G. L. c. 265, § 1), they should find him guilty of murder in the first degree. After the jury had returned their verdict of guilty of murder in the first degree, the defendant filed a motion that the "court enter a verdict of guilty of murder in the second degree notwithstanding the verdict of the jury." G. L. c. 278, § 11, as amended by St. 1964, c. 108, §§ 1, 2. We treat that motion as the equivalent of a request that the judge reduce the verdict from guilty of murder in the first degree to guilty of murder in the second degree. The judge denied the motion.

The question raised by both motions is the same since the state and quantum of the evidence was the same when each motion was filed and denied. The question was whether the evidence, in its light most favorable to the Commonwealth, was sufficient to permit the jury to infer deliberate premeditation. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). We believe that it was not, and that it was therefore error to deny the earlier of the two motions.

Both sides to this case rely in large part on this court's exhaustive treatment of the subject of "deliberately premeditated malice aforethought" in the case of *Commonwealth* v. *Tucker,* 189 Mass. 457, 486-496 (1905), which includes extracts from instructions to the jury on this subject in numerous earlier trials. It is sufficient to state the court's summarization of those extracts in the following language, at 494-495: "The various extracts speak for themselves. In substance the view expressed is that while it must be shown that a plan to murder was formed after the matter had been made a subject of deliberation and

reflection, yet in view of the quickness with which the mind may act, the law cannot set any limit to the time. It may be a matter of days, hours, or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the resolution to kill, and lastly the killing in pursuance of the resolution; and all this may occur in a few seconds."

The evidence shows that the defendant went to the victim's apartment at her invitation, that they engaged in consensual conduct without discord until the point where the victim laughed at him. The defendant had not gone there with any plan or purpose to inflict harm on the victim, and he had gone there unarmed. The cord with which he brought about her death was fortuitously within reach at the moment that he caused her death. It had not been brought to the premises by him or placed in its position by him or by any other person for use as a weapon. In short, the circumstances of this homicide would not support an inference or finding of deliberate premeditation on the part of the defendant.

5. *Review under G. L. c. 278, § 33E.* We have reviewed the entire case both as to the law and the evidence and we conclude that the defendant is entitled to no relief other than the reduction of the verdict from guilty of murder in the first degree to guilty of murder in the second degree in accordance with part 4 of this opinion.

6. *Record on appeal.* The record on appeal in this case includes eighty-one pages of a variety of material printed at public expense and collectively described on the cover thereof as "DEFENDANT'S APPEAL." Over one-half of the record (pp. 12 through 63 and several other isolated pages) consists of material which is in no way involved in this appeal as ultimately argued in the defendant's brief,[7] either because there was no assignment of error

---

[7] This extraneous material included the following: motion for leave to incur expenses for a psychiatrist, motion for leave to incur expenses for the services of an investigator plus a lengthy memorandum by the investigator of what he did and what he learned, motion for copies of medical examiner's report, motion for copies of defendant's statement,

relating thereto, or because if covered by an assignment it was not argued in the brief. Thus the inclusion of this material served no purpose other than to drain public funds and to encumber the record on appeal unnecessarily. We had occasion to consider this subject recently in *Commonwealth* v. *Turner*, 371 Mass. 803, 814-815 (1977), but it is probable that when that decision was issued the record in the present case had already been prepared. The problem is one which requires the continuing attention and cooperation of trial court judges and clerks and of trial counsel.

7. The case is remanded to the Superior Court for the entry of a verdict of guilty of murder in the second degree, and for the imposition of a sentence of "imprisonment in the state prison for life" therefor as provided in G. L. c. 265, § 2.

*So ordered.*

HENNESSEY, C.J. (dissenting in part). I agree with the main opinion in all aspects except the conclusion that the evidence did not warrant an inference that the defendant acted with deliberately premeditated malice. Although the evidence was sparse as to this issue, I believe it was suffi-

---

motion for grand jury minutes, motion for police report, motion for list of witnesses before grand jury, motion for list of witnesses to be called at trial, motion to inspect all of Commonwealth's "real evidence," motion to be furnished with evidence favorable to the accused, motion to suppress, motion for criminal records of all witnesses, motion for reduction of bail, motions for inspection and copying of records and copying of medical records, motion to incur expenses for the services of a forensic pathologist, memorandum in support of defendant's motion to be furnished with evidence favorable to the accused, motion to be furnished with evidence favorable to the accused, two orders of habeas corpus for defendant, memorandum in support of defendant's motion to produce portions of police records, motion for copies of death certificates, motion to instruct witnesses to refrain from making statements about defendant's prior conviction and parole, affidavit in support of defendant's motion for examination of prospective jurors, motion to amend indictment, and motion for examination of prospective jurors.

cient for the jury's consideration. Consequently, the crime of murder in the first degree was properly submitted to the jury as a permissible verdict.

I proceed on the assumption, as the main opinion apparently does, that the relevant admissions of the defendant are to be accepted. This is appropriate, by reason of the lack of other and contradictory evidence. Disbelief of the defendant's statements would leave the jury with no detailed evidence of the occurrence. Even if the jury chose to accept as true only part of the defendant's admissions, it is apparent that the case against the defendant would not be bolstered.

The crucial statements of the defendant, summarized in the main opinion were as follows: "The victim laughed at the defendant and told him she had wasted her evening. He asked her to stop laughing at him and she continued, so he put his hand over her mouth to stop her. She still continued to laugh and he slapped or struck her. She started to yell and tried to leave. He then grabbed a piece of cord or twine from a table, wrapped it around her neck, and applied pressure. He saw blood coming from her nose and mouth and thought he had killed her. He put her body on a couch and then left the apartment. In leaving the apartment the defendant wiped the doorknob to eliminate fingerprints and took with him the empty beer cans and the victim's pocketbook. He disposed of the victim's automobile driving license and the keys to her apartment and automobile by throwing them away in some tall grass and shrubbery to the rear of the apartment complex where he lived. The police found the items there on August 19, 1974."

The main opinion analyzes the evidence in somewhat persuasive language, but it accepts, as I do, the language of Commonwealth v. Tucker, 189 Mass. 457 (1905), as the controlling law. That case says at 495: "First the deliberation and premeditation, then the resolution to kill, and lastly the killing in pursuance of the resolution; and all this may occur in a few seconds" (emphasis supplied). In my view, the main opinion, while recognizing the rule

of *Tucker* as controlling, has here departed from the principles of that case.

I do not reach, and the main opinion did not have to reach, the question whether, in an exercise of this court's discretionary power under G. L. c. 278, § 33E, the verdict should be reduced to a conviction of murder in the second degree. Perhaps the court might have concluded that the weight of the evidence was such that justice indicated such a reduction of the verdict under § 33E. See, e.g., *Commonwealth* v. *Williams*, 364 Mass. 145, 150-152 (1973). Such a result could be reached without eroding, as I fear the approach of the main opinion does, the rule of *Tucker*.